1
2
3
4
5
6
7

**IN THE UNITED STATES DISTRICT COURT**

8

**FOR THE WESTERN DISTRICT OF WASHINGTON**

9
10
11

12  ATM SHAFIQUL KHALID, an individual and

13  on behalf of similarly situated, Xencare

**No.**   2:19-cv-00130 RSM

14  Software, Inc.

15                                        Plaintiff(s),

**COMPLAINT FOR DAMAGES FOR ANTITRUST, RACKETEERING, CLASSACTION**

16
17       vs.
18
19  MICROSOFT CORPORATION, a
20  Washington corporation, John Doe *n*
21
22                                        Defendant(s).
23       COMES NOW the plaintiff, ATM Shafiqul Khalid ("Khalid"), and Xencare Software,

24  Inc. ("Xencare") together referred as "Plaintiff" or "Plaintiffs" for a cause of action against

25
26

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA 98052
(425) 445-7157

Defendant Microsoft Corporation, ("Microsoft"),  also along with John Doe 1 through John Doe

*n*, together referred as "Defendant(s)", state and allege as follows:


## I.      NATURE OF THE ACTION

1.  This action challenges under Section 1 of the Sherman Act for creating restraint of trade with

overbroad employee agreement among Microsoft and its employees.

2.  Defendant(s) employee agreement are a restraint of trade that are per se unlawful under

Section 1 of the Sherman Act 15 U.S.C. § 1 and an attempted monopoly under Section 2 of

the Sherman Act 15 U.S.C. § 2. Plaintiff seeks to recover damages sustained because of these

violations of Microsoft.

3.  Cause of Action under Federal Racketeering Act under 18 U.S.C. § 1964(c) for Microsoft

violation of 18 U.S.C. § 1962(d) with predicated act of extortion under Hobbs Act 18 U.S.C.

§ 1951.

4.  Cause of Action under Washington Racketeering Act RCW 9A.82.100(4)(d) for violation of

RCW 9A.82.060 with predicated Act under RCW 9A.56.130.

5.  Plaintiff also is looking for class certification because many class members have been

impacted by Defendants' violations with damages exceeding $5 million with more than 100

class members.


## II.      JURISDICTION AND VENUE

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

6.  The Plaintiff, ATM Shafiqul Khalid ("Khalid") signed an employee agreement with Defendant Microsoft. Defendant through this employee agreement claimed the right to patent title invented by Khalid that was not covered by the employee agreement. Patent and patent good have substantially affected interstate commerce. The court has subject matter jurisdiction under Section 15 of the Sherman Act, 15 U.S.C. § 15 for violation of Section 1 of the Sherman Act § 1. This Court also has subject matter jurisdiction under 18 U.S.C. § 1964(c).

7.  This Court has subject matter jurisdiction under Class Action Fairness Act of 2005, 28 U.S.C. Sections 1332(d), 1453, and 1711–1715, because the amount of controversy is more than $5 million, and there are more than 100 employees residing in multiple states who signed employment agreements with Defendant.

8.  Venue is proper in this jurisdictional district under Section 22 of the Clayton Act, 15 U.S.C. §§ 22 and/or under 28 U.S.C. § 1391(b)(2),(c).  Defendant transacts, or have transacted, substantial business here.


### III.    DEFENDANTS


9.  Defendant Microsoft corporation is a Washington corporation with its principal office of business in Redmond, Washington.

10. Some discovery is needed to be conducted to find more Defendant(s) who employed employees who were subject to Defendant(s)'s patent grabbing scheme. For now, Plaintiff is

COMPLAINT
KHALID v MICROSOFT
Page 3 of 34

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

using fictitious name "John Doe 1 through John Doe $n$" to represent them, there might be 1-300 of such corporate Defendants.

## IV.    FACTS

### Background

11. Microsoft Corporation (commonly referred to as Microsoft) is an American multinational technology company headquartered in Redmond, Washington, that develops, manufactures, licenses, supports and sells computer software, consumer electronics and personal computers and services. In 2018, Microsoft reported $110 billion revenue 134,000 employees worldwide with around 47,000 employees in Washington alone. Its best-known software products are the Microsoft Windows line of operating systems, Microsoft Office suite, and Internet Explorer web browser. Its flagship hardware products are the Xbox game consoles and the Microsoft Surface tablet lineup. It is the world's largest software maker measured by revenues. It is also one of the world's most valuable companies. Microsoft was founded by Bill Gates and Paul Allen on April 4, 1975, to develop and sell BASIC interpreters for Altair 8800. It rose to dominate the personal computer operating system market with MS-DOS in the mid-1980s, followed by Microsoft Windows. Microsoft also conducts a patent licensing business through Microsoft Technology Licensing, LLC.

12. Plaintiff Khalid is a very creative engineer. Before joining Microsoft Plaintiff, he published 14 research papers in journal and conference proceedings. Plaintiff had been named inventor in 20 patents issued by United States Patent and Trademark Office ("USPTO"), and European Patent Office ("EPO"). Plaintiff always had his own creative projects in various areas to exercise his creativity and intellectual capacity. Plaintiff is an expert in the area of Computer software, Operating Systems, Cloud and virtualization with 20+ years of experience.

13. On December16, 2011, Microsoft offered ATM Shafiqul Khalid a job as Senior Program Manager in Microsoft Bing division. Microsoft recruiter Shannon Carlsen asked Khalid to sign a Microsoft Corporation Employee Agreement ("Employee Agreement") [Exhibit A]. Before signing the Employee Agreement, Khalid wanted to attach an Invention Disclosure list under section 6 of the Microsoft Employee Agreement, but there was not a way to attach such a list online. The Microsoft employee agreement had a line "If you wish to attach a list of inventions, per paragraph 6, below, please contact your recruiter". Khalid contacted Shannon Carlsen as required by the agreement. [Exhibit B].

14. Microsoft Employee Agreement section 5 contained, "as to any Invention complying with 5(a)-(c) above that results in any product, service or development with potential commercial application, MICROSOFT shall be given the right of first refusal to obtain exclusive rights to the Invention and such product, service or development." The invention referenced here was an invention solely owned by employee Khalid and his startup.

15. Section 6 of this employee agreement contained, "I have attached a list describing all Inventions belonging to me and made by me prior to my employment with MICROSOFT

that I wish to have excluded from this Agreement. If no such list is attached, I represent that there are no such Inventions."

16. On December19, 2011, Khalid sent an email to Shannon Carlsen attaching an Invention disclosure list per instruction from Shannon [Exhibit C]. Khalid signed the Employee Agreement. Later Shannon Carlsen acknowledged that she had received the invention disclosure list as attachment. Shannon copied that email to recruiting coordinator Ricardo Bustamante [Exhibit D]. Khalid was given no further instructions on this invention disclosure list.

17. On January9, 2012, Khalid participated in a Microsoft employee orientation program where Khalid was required to sign a hard copy of the employee agreement using INK. Khalid again submitted an Invention disclosure list and left a hand-written note on the Employee Agreement to show there were additional pages.

18. The invention disclosure list Khalid submitted on December19, 2011, had nine (9) patentable items with short description of the invention [Exhibit E]. Khalid also marked a few items as pending patent applications with United States Patent and Trademark Office.

19. On July15, 2014, the United States Patent and Trademark Office issued US patent 8,782,637 (hereinafter referred to as "mini-cloud patent") that Khalid listed in the Invention Disclosure document on December19, 2011.

20. As part of Microsoft job application Khalid submitted a resume. The resume had an embedded link on pending patent from its summary section. The list would have shown the publication of the mini-cloud patent application on December12, 2011.

COMPLAINT
KHALID v MICROSOFT
Page 6 of 34

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

21. After signing the Microsoft employee agreement on December19, 2011, Plaintiff worked for Microsoft from January9, 2011, until February 2, 2015, at Microsoft offices in Bellevue and Redmond, Washington. Plaintiff also worked for Microsoft during the years of 1998-2006.

22. On May 27, 2016, as explained in more details later, Microsoft notified Khalid through its external counsel that no exclusion list existed, Microsoft got some right to patents Khalid had listed in the disclosure list, and Khalid need to give Microsoft royalty free license to clear patent dispute.

23. Microsoft has 88% market share in desktop operating system. Microsoft has 88% market share in office productivity suit market such as Microsoft Office suites that often are delivered as cloud services such as Office365. Microsoft also has significant market share in Gaming space.

### Development of

### 8,286,219 and 8,782,637 Patent

24. While in graduate school, during 1996-1997 Plaintiff invented an idea of subscription that would allow a user to consume software without driving to store to buy it. During 1997, Plaintiff did some work on subscription in very rudimentary form. Plaintiff continued his work for years through 2010 when the idea evolved over time and transformed into mini-cloud subscription that would allow a user to consume computing resources and content on demand, integrating parts of Plaintiff's subscription idea plaintiff had in 1996. Plaintiff had one patent application filed in 2001 software subscription and another in 2007 to cover

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

content subscription including digital movie. The idea evolved to form cloud computing for residential users using mini-cloud host and thin terminals. The US Patent office issued a patent 8,782,637 ("637 patent") in 2014. Plaintiff had a total of 30 ideas in the form of patent or in the development stage. To date, in spite of any adverse situation, Plaintiff continued adding his labor to refine and prosecute patent applications through US patent office coming from those ideas.

25. Mini-cloud 637 patent comprises several components: a) thin terminal something like Roku stick that can stick to any monitor then connect to b) subscription provider in the cloud and c) connect to a mini-cloud host device to deliver computing resources with specific integration techniques outlined in the patent. Microsoft Xbox One uses all components of 637 patents or mini-cloud invention. The invention is expected to reduce consumer cloud subscription cost by device consolidation.

26. Around 2005, Plaintiff, while working with his friends and partner, made an invention to protect computer systems from viruses and spyware. Plaintiff filed a patent application in 2005 titled "SAFE AND SECURE PROGRAM EXECUTION FRAMEWORK". The application expired in 2006.

27. On February 16, 2008, after months of efforts to commercialize the subject matter of the expired patent application on security, after some validation and improvement with "single system framework". Plaintiff startup team filed the 2005 patent application with the improved version titled "SAFE AND SECURE PROGRAM EXECUTION FRAMEWORK" with application number 12/032,663.

28. On October 9, 2012, the US patent office issued Patent 8,286,219 ("the '219' Patent") for the application number 12/032,663.

29. All those years, Khalid recruited a team of engineers to incubate and productize both security and mini-cloud technologies. Khalid and his team of around 20 people invested more than 30,000 engineering hours over the years with equivalent of at least $3.5 million investment as value of labor. And Khalid and his counsel recently spent $2 million to clear claims which one of Microsoft's partner had made on the 219 and the 637 patent.

30. Defendant's mini-cloud patent was developed to host and deliver any digital services through cheap terminals in a cost-effective way that makes the cloud services affordable to an ordinary residential user. And the security patent was developed to protect the host like systems.

31. Khalid founded Xencare Software, Inc., and owns majority stocks. Xencare delegated certain rights to Khalid [Exhibit I].

**Micro-Data Center  Incubation  IP Licensing  Efforts**

32. By the year 2014, thin devices with a form factor similar to the "mini-cloud thin terminal" were developed by various companies including Roku, Amazon FireTV stick, etc. Those devices were so popular that today more than half of US households use one of those devices. Plaintiff decided to incubate further on ideas using the mini-cloud host component with a business model called Micro-Data Center that can work as a single device or form a mega

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

data center distributed inside a City. Plaintiff was planning to form an IP licensing business and incubation to further develop ideas.

33. On or around February 12, 2013, Plaintiff also had a discussion with Microsoft Vice President VP Amit Mittal on the mini-cloud invention. Amit later told Khalid that he had a discussion within Microsoft and wouldn't pursue the idea.

34. In March 2014, Plaintiff had a meeting with Microsoft Executive Vice President (EVP) Kirill Tatarinov reporting to Microsoft CEO Satya Nadella. Plaintiff discussed the mini-cloud invention in details. Kirill advised Khalid to talk to Stephen Elop who was planning to join Microsoft as part of Microsoft Nokia acquisition. Stephen Elop was designated to head Microsoft device division that included Xbox One.

35. On June 30, 2014, Plaintiff sent an email to Stephen Elop, Microsoft EVP reporting to Satya Nadella, Microsoft CEO. The email included Satya Nadella, Brad Smith, Microsoft General Counsel, and a few executives. In the email, plaintiff proposed a business model based on the mini-cloud invention. On July 1, 2014, Stephen Elop declined Khalid's proposal.

36. In 2015, after being terminated by Microsoft, Plaintiff put in efforts to incubate and form business, or license developed technologies, to others. Plaintiff shared his proposal with Microsoft as well. Plaintiff needed some funds from investors as well.

37. Plaintiff discussed part of software subscription with Bob Rinne, Khalid's manager at Microsoft, around 2000 timeframe. Microsoft declined Plaintiff's idea.

38. After leaving Microsoft on Feb 2, 2015, Plaintiff was trying to accumulate resources to form an IP licensing and/or incubation business. Khalid had around 30 inventions in the pipeline

COMPLAINT
KHALID v MICROSOFT
Page 10 of 34

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

to protect the micro-data center space to solve consumer problem in a market size of $70 billion/year. Khalid wrote a proposal and shared with Microsoft as well.

39. Plaintiff planned to give some party easy license to his patent in an attempt to build his patent portfolio and move on incubation. When parties found that Microsoft had a demand to get free license to all present and future patent family, this deterred party investors, which made it impossible for Khalid to financially support his work on his 30 patent portfolio and micro-data center ideas.

## Microsoft Claims Khalid's Patents in 2015

40. On February19, 2015, Patrick Evans, Microsoft inhouse patent attorney wrote to Khalid "As per the Microsoft Corporation Employee Agreement you executed on December 19, 2011, Section 5 sets forth your obligations to assign intellectual property to Microsoft. Section 6 addresses inventions to be excluded, and no inventions were listed by you for exclusion" [See Exhibit F]. On the same date Khalid notified Patrick that Khalid had submitted an exclusion list.

41. On March 3, 2015, Patrick Evan wrote Khalid "...As per the employment agreement, Microsoft retains an assignment right in the patents. Please let me know if you need anything more" referring to US patent 8,782,637 and 8,286,219, sending a link to a form http://www.uspto.gov/forms/pto1595.pdf". This form is used to transfer patent title and right from one party to another. In this case, Patrick wanted Khalid to transfer his patent right to Microsoft.

COMPLAINT
KHALID v MICROSOFT
Page 11 of 34

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA 98052
(425) 445-7157

42. On March 13, 2015, Khalid told Patrick Evan that Khalid submitted a copy of his original 2011 invention disclosure list.

43. On April14, 2015 Khalid requested Patrick to check with the hand-signed (using INK) employee agreement that Khalid signed on January 9, 2012. Khalid also requested to have a copy sent to him of the hand signed employee agreement. On April 16, 2015, Khalid re-requested from Shannon Flynn to have a copy sent to him of the INK signed Employee document. On April27, 2015, Khalid notified Patrick that Khalid had not received the INK signed copy of the 2012 Employee Agreement.

44. On June15, 2015, Khalid notified Patrick over Email that Microsoft Xbox One is infringing on Khalid's mini-cloud patent US 8,782,637, and he asked Patrick if there was any other way to resolve the dispute.

45. On June 22, 2015, Khalid told Patrick over Email that Khalid will give one security patent to Microsoft if Microsoft pay build out cost for that patent. Khalid also told Patrick that Khalid will give license to Microsoft for mini-cloud patent if Microsoft is willing to pay reasonable royalty fee. Patrick declined that offer.

46. On July 9, 2015, Patrick told Khalid that he Patrick will put together an agreement if Khalid will agree to give Microsoft royalty free access to all present and future patents related to Mini-cloud systems in exchange of resolving all disputes. Khalid found this offer to be very unfair, anti-competitive, and thus Khalid declined this "resolve offer" given by Patrick.

47. In July, 2015, Patrick also clarified that Microsoft's claim would extend to mini-cloud patent family for past, present, and future patents that indirectly claim all the other patents in the Invention Disclosure documents.

COMPLAINT
KHALID v MICROSOFT
Page 12 of 34

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

48. On August 29, 2015, Khalid told Patrick and Shannon that Microsoft's claim to inventions is causing problems for Khalid to refile many patent applications related to the patent family listed in the Invention Disclosure. Microsoft did not respond to release its claim.

49. On May 27, 2016, Khalid received a letter ("M&G letter") from Microsoft outside counsel Andrew T. Pouzeshi at Merchant & Gold [See Exhibit G]. The letter said, "You also agreed to provide a list identifying all inventions made by you or belonging to you prior to your employment with Microsoft. There is no evidence that you provided a list of inventions prior to either period of employment…your failure to exclude inventions described in the '219 and '637 patents resulted in a grant of an exclusive, royalty-free, irrevocable, worldwide license to those inventions to Microsoft.". Through the external counsel, for the first time in a signed letter, Microsoft officially denied that Khalid had ever provided a list of inventions made by him or belonging to him.

50. Microsoft asserted Citrix Systems, Inc was a Microsoft vendor. Microsoft also said, "It is Microsoft's standard practice when entering into contract with vendors that Microsoft owns all of the intellectual property produced by the vendor and the vendor employees". Upon receipt of the M&G letter Khalid demanded Microsoft to send him Vendor Agreement but Microsoft refused to share with Khalid.

"Microsoft, in the M&G letter, told Plaintiff that until Khalid grant royalty free license to Microsoft to the 637 and the 219 patent, Khalid can't tell his investors that Microsoft has no interest in the patents.

**Microsoft Partner Citrix Systems, Inc.,**

COMPLAINT
KHALID v MICROSOFT
Page 13 of 34

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

**Claimed 637 and 219 patents**

51. On September 25, 2011, Citrix Systems, Inc.("Citrix") claimed underlying patent application resulting in the 219 and the 637 patents and withheld plaintiff's severance money until Khalid assigned patent application to Citrix.

52. On October 2, 2015, Khalid filed a suit against Citrix Systems, Inc.("Citrix") in King County Superior Court to clear cloud on title to 219 patent and 637 patent. Citrix is a Microsoft business partner and vendor. Citrix chose to dispute Khalid's ownership to the 219 and 637 patents since year 2011 by saying Khalid didn't disclose his patent work and so Citrix should have the right to Khalid patent with the employment contract Khalid had signed with Citrix. Citrix did not prevail on their assertion. Citrix counter sued Khalid and Xencare on May 12, 2016 in federal courts to claim 219 and 637 patents.

53. During the state court trial, around 2017, Citrix Systems claimed Microsoft was their partner and Citrix delayed the state court case to do additional discovery relying on the Microsoft M&G letter. Those delays resulted in increased cost and loss of time to Khalid.

54. In 2017, Citrix sent a discovery request to Microsoft as part of the state court proceedings. Microsoft produced the 2011 Microsoft Employee Agreement without the exclusion list Khalid submitted to Microsoft on December 19, 2011.

55. During the trial in July of 2018, Citrix chief architect Brad Petersen testified and suggested that Citrix wanted to protect its partner and suggested that Khalid's patent could have been hostile to those partners. Brad also testified that Citrix never sold anti-virus kind of products, an area 219 patent targeted to solve. Brad also testified that Citrix didn't sell any thin client products either. 637 patent included thin terminal similar to thin client.

COMPLAINT
KHALID v MICROSOFT
Page 14 of 34

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

56. During the state court proceedings, around 2017, during communication with Khalid's counsel, Citrix counsel said that Citrix has a common interest with Microsoft to ensure that a patent doesn't get to patent troll. Citrix also testified that Citrix and Microsoft together held 70% market share in virtual desktop space.

57. On July 16 through 31, 2018, at the state court trial, Khalid's experts, John Forbes and Lorraine Barrick, testified that the value of the software security business and the thin terminal business based on both the 219 and the 637 patent would have been around $27 million. Citrix showed the Microsoft M&G letter to the jury to undermine the damage.

58. On August 1, 2018, in a unanimous verdict, 12 King County jurors found that Citrix breached its agreement, Khalid didn't breach the same agreement by not assigning 219 patent and 637 patent to Citrix. Subsequently, King County Court Judge entered a $5.8 million judgment against Citrix that included a $3 million Jury award, and $2.8 million to cover fees and costs. The Court also entered a declaratory judgment against Citrix that Citrix doesn't have any right to either the 219 or the 637 patent. The cost of litigation exceeded $2.8 million.

**<u>Market Size of Technology  Covered  by Patents and Infringement</u>**

59. On or around July 21, 2017, Microsoft CEO Satya Nadella said in their financial reporting, "Our gaming business now is more than $9 billion and growing profitably – 2017". Considering Microsoft is not the only player, the overall market size is expected to total at least $400 billion in business over 20 years. A nominal 1% royalty would set the infringement value to $4 billion that Microsoft fraudulently tried to get access to.

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

60. Microsoft Xbox One product infringes on claim 1, 4, and 20 of US patent 8,782,637 which is a violation of plaintiff's exclusive right protected under 35 USC § 271. The infringement is a direct using of all of the components in the 637 patent, or Xbox One uses components in an equivalent way that infringes on the 637 patent. The Microsoft infringement is willful, and Microsoft used fraud to claim the 637 patent right to avoid liability under infringement laws.

**Offshore Tax Engineering Scheme  to Avoid avoid Taxes**

61. In 2012, one US senate panel report said that from 2009 to 2011, Microsoft shifted $21 billion offshore, almost half of its U.S. retail sales revenue, saving up to $4.5 billion in taxes on goods sold in the United States. The report also said the software giant shifts royalty revenue to units in low-tax nations, such as Singapore and Ireland, avoiding billions of dollars of U.S. taxes.  Those unfair practices eventually impact consumers.

62. In 2015, the New York Times and Bloomberg made reports based on leaked Panama papers that corporations had been using intellectual property rights as a vehicle to transfer money to offshore accounts to avoid income taxes in the form of tax engineering. In such a tax engineering scheme, corporations would transfer right to intellectual properties to an offshore entity often without any employee and then make a generous royalty payment to such an offshore account and enjoy low or no tax. Those leaked reports and public statements showed that Microsoft and its partner moved billions of dollars offshore.

63. By 2017, corporations have moved around $2.8 trillion dollars that should have been in the USA and tax revenue from them could have funded many public projects. If corporations

COMPLAINT
KHALID v MICROSOFT
Page 16 of 34

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

develop their intellectual properties through extortion, illegal, unfair and grossly unethical practices, those tax engineering schemes would be unfair and illegal practices. Also, those corporations never disclosed to its employees that employees work towards intellectual properties would be used in such unfair tax engineering practices. With full disclosures, patriotic employees who are the actual owner of intellectual properties would not assigned their private right to corporations to associate themselves with such tax engineering scheme that deprive our nation as a whole and their own families of the tax supported programs and places of expectation for our tax dollars.

64. Corporations used intellectual property to increase brand value/trademark and used the collection of intellectual property to make generous royalty payments to offshore accounts that held rights to intellectual property in order to receive royalty payments and to deceive the IRS and the US public.

**Microsoft Employee Patent Grabbing Scheme is**

**Injurious to the Employees Rights**

65. Microsoft Agreement section 5 award Microsoft "first right of refusal" to any employee patent even if the patent is not related to Microsoft business and protected under RCW 49.44.140. That section violates Washington Statute RCW 49.44.140 and similar statutes in other states.

66. The "first right of refusal" has value greater than Zero (0) and an employee losses that every day he remains under the contract. The right is in the form of an option, Microsoft can choose to exercise that option at Zero(0) exercise price at their own choosing. The option is more

like a mining right to a piece of land owned by employee where the option has value even if it is   unknown if that land has any mineable materials.

67. The Microsoft Employee Agreement assigns right to an employee's future inventions during his employment at the time he signs the Employee Agreement. The agreement doesn't set any scope or boundary to such inventions. Microsoft don't have any inhouse objective standard, or review process, rather the company applies subjective financially motivated, anti-competitive practices.

68. Any right associated with a patent is a right protected by the Fourteenth Amendments of the United States Constitution. By not defining a clear boundary, Microsoft deprives its employee of   due process of law. Microsoft contaminates employee's future invention by creating cloud and uncertainty around the ownership and rights around the title to invention upon signing employee agreement. Microsoft drives the value of such inventions to Zero(0) or negative dollar by demanding free license where employee would bear all expenses to maintain patent family

69. Microsoft by claiming any of Plaintiff's patent rights, claimed some service plaintiff rendered for himself and his start-up that plaintiff would never render for any employer voluntarily. Plaintiff's such service covered thousands of hours of work he added in his patents in terms of development and prosecution of patents that by no means falls under the term of Microsoft Employee Agreement.

70. The Microsoft Employee Agreement, Section 5 and Section 6, are designed to get free labor from employees and those employees would be working without knowing that Microsoft would or could claim and benefit from this free labor.

COMPLAINT
KHALID v MICROSOFT
Page 18 of 34

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

71. Microsoft's use of the exclusion list under Section 6, either destroying the employee's submitted list, as in this Khalid's instant, and perhaps an unknown number of other employee's, or refusing to acknowledge its existence, as this situation has shown, is designed to contaminate an employee's patent that effectively transfers free labor to Microsoft that the employee would never render to Microsoft voluntarily.

72. Once Microsoft successfully contaminates an employee's patent, as in the instant case, that employee would need tremendous financial resources to clear their patent right through court. An ordinary employee can't afford the time or the legal costs to pursue and challenge a company on the legal court front, nor should anyone be forced to challenge deception ever, and though in the face of such deception, an ordinary employee is forced to share his already given free labor with Microsoft, unwillingly.

73. Microsoft asked Plaintiff to sign Employment Agreement on December19, 2011. Plaintiff started getting a salary from Microsoft on January 9, 2012. Microsoft later said the Employee Agreement was in force from December19, 2011, not from January 9, 2012, therefore the agreement transferred all inventive services to Microsoft from December 19, 2011. Microsoft didn't pay for 3 weeks of services, but claimed inventive service in an attempt to retain free labor, first right of refusal to employee patent, and assignment right to invention for that 3 weeks window.

74. Microsoft has a systematic scheme, where Microsoft would maliciously take financial advantage of its employees, and will engage its multiple employees in employment opportunities, while conspiring to claim and then profit from an employee's patent, an act

COMPLAINT
KHALID v MICROSOFT
Page 19 of 34

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA 98052
(425) 445-7157

that deprives the employee from rights he or she is protected by in both the Thirteenth and Fourteenth Amendments of the United State's Constitution.

75. An ordinary employee can't afford hundreds of thousands of dollars in costs to protect his right through litigation, and he or she can't afford to abandon his patent work because that would be total destruction of his personal property. Rather, he would find him or herself in an unknowing and surprising trap of financial and property submittal to Defendant to share the fruit of his labor that he would never offer free of cost willingly; this equates to involuntary servitude under Thirteenth Amendments. And Microsoft is violating the Fourteenth Amendment right by transferring employee patent right without due process of law. Microsoft doesn't offer any additional compensation for transferring such patent right. Microsoft violation is continuing violation. Because of Microsoft violation, Plaintiff was deprived of enjoyment of his patent right, Plaintiff couldn't use his labor time and efforts for his intended purpose that he rendered for himself.

76. Microsoft conducts a few billion dollars of business with both the federal and local governments every year.

77. Defendant(s) require an employee to assign future invention at the beginning of employment. When the employee makes an invention Defendant(s) require a second assignment from the employee. Defendant(s) then files the second assignment with the US patent office not recording the first assignment with USPTO.

78. On January 30, 2009, in an email to Cnet News in responding to Microsoft v Miki lawsuit, where Microsoft asserted Miki didn't disclose his patent to Microsoft before employment, Miki Mullor said that he had informed Microsoft about his patent in his resume and

COMPLAINT
KHALID v MICROSOFT
Page 20 of 34

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA 98052
(425) 445-7157

employment agreement. Miki backed his statement, and this shows Microsoft assertion in M&G letter that Khalid didn't disclose his inventions is not the first of such statements from Microsoft that show either irreparable and costly neglect in Microsoft's applicant/new employee document bookkeeping, or show a blatant cover-up of a conspiracy to steal intellectual property and labor time from their employees. .

79. On January 30, 2009, Miki Mullor further wrote to Cnet, "Microsoft's complaint against me in Washington is a shameful and a desperate attempt to put pressure on me and my family from continuing to pursue our legal rights in the federal court in Los Angeles". Miki's filed patent infringement lawsuit against Microsoft partner Dell, HP and Toshiba in Federal Court in Los Angeles.

80. Microsoft maintained its pressure scheme on Miki Mullor until the end of 2009 when Miki settled with Microsoft on the patent issue under undisclosed terms. Microsoft, by using its M&G letter in 2016, tried to achieve a similar result where Microsoft partner Citrix System tried to use this same Microsoft assertion written in that letter to hurt Khalid's damages claims against Citrix and win on an argument that either Microsoft or Citrix owns 219 and 637 patents.

### Role of Davis Write Termite

81. Davis Write Termite is the law firm who has business relationship with both Microsoft and Citrix Systems. Plaintiff offered Citrix to resolve the patent issue with a license term of $50,000/patent. Erica Wilson from Davis Write, representing Citrix in 2015, didn't accept the offer that forced Plaintiff into litigation. Plaintiff and his team were eventually forced to

accumulate $2.2+ millions in legal fees and cost that ultimately cleared the patent title issue with Citrix, along with damages.

82. Davis Write Termite refused to disclose its fee in Khalid v Citrix, the state court case, and it is expected to be higher than Khalid's cost, so Davis Write Termite made at least $2 million.

83. By refusing $50,000/patent license, and pushing into $2+ million litigation, Davis Write was motivated by either its own financial gain or move forward clients' employee patent grabbing scheme. Davis Write Termite didn't apply proper professional judgment, and wanted to protect the illegal interest of Microsoft and Citrix to scare off other employees who want to protect their interest and Davis Write became part of grand patent grabbing scheme by its client.

84. Strangely enough, after losing its claim on patents in state court, Citrix asserted that it might get some right to patent through Microsoft, and Microsoft asserted in another communication that Microsoft have some right to disputed patent through its agreement with Citrix. Those make a circular argument.

## Class Certification

85. Thousands of employees signed Employee Agreement with Microsoft where those contracts transferred valuable employee rights to Microsoft violating local and federal law. Those employees' rights had had been injured and they together form a class.

86. Members in the class would have one or more of the following attributes a) they have signed employee agreement with Microsoft b) The agreement was a form agreement with an ambiguous and over broad patent assignment provision that would transfer patent right upon

COMPLAINT
KHALID v MICROSOFT
Page 22 of 34

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

signing c) member would sign the employee agreement at a date earlier than their job start date, however doesn't receive salary from the signing date d) Member was either told or understood that they must sign the employee agreement as a condition to their job.

87. Class members had been either seriously exposed to, or had been damaged by the wrongful patent grabbing scheme explained earlier. Such scheme injured the class member's constitutional rights and other forms of rights provided by local, state and/or common law.

88. Damages of the class members are more than $5 million, and there are more than 100 class members who signed Employee Agreements with Microsoft.

89. Plaintiff Khalid has been personally injured and want to represent the whole class if certified.

### Additional Facts

90. Plaintiff will send a letter to the US attorney general to report the Employee Agreement abuse by US corporation(s) violating constitutional rights, anti-trust, Racketeering Act, [See Exhibit H]. This Court can request briefing from other corporations. Incorporating here all of the facts and allegations from Exhibit H by reference.

### Damages

91. The plaintiffs suffered damages caused and proximately caused by the actions of the Defendant as set forth below.

### V.    VIOLATION ALLEGED

### (Count I - Violation of Section 1 of Sherman Act)

92. Plaintiff hereby incorporates paragraphs 1 through 90.

COMPLAINT
KHALID v MICROSOFT
Page 23 of 34

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

93. Defendant(s) hire employees and require them to sign an employment agreement. The Employment Agreement tied up together is a few separate agreements a) confidentiality agreement b) patent assignment agreement of future inventions. Plaintiff had to sign both as part of the Employment Agreement . This tying is anti-competitive and a restraint of trade because the assignment of future invention is ambiguous, overbroad, violated local and federal law.

94. The patent assignment agreement assigns rights to the employee's future invention(s) to the Defendant(s) even if the invention has nothing to do with employer's business. Microsoft, through this ambiguous and over broad agreement takes rights of the employee's invention if that invention, even if unrelated to their business, becomes commercially valuable.

95. Defendant(s) are also in the business of patent licensing and use patents to develop products and transfer money to avoid tax.

96. Defendant significantly reduced the value of employee patent through its employee agreement. Patents are basic ingredients of the supply chain of a product. Defendant(s) are fixing the price of employee patent in its favor through employee agreement.

97. Defendant(s) are procuring patent at a much cheaper cost. At the same time reduces the supply of patents in the market place by controlling or contaminating employee patent title. An employee with an agreement with the Defendant(s) can't enter the market with his own invention. Defendant action is anti-competitive.

98. Defendant(s) claimed plaintiff patent on bad faith. An assertion of rights to intellectual property that is on bad faith and/or based on fraud is a restraint of trade.

COMPLAINT
KHALID v MICROSOFT
Page 24 of 34

ATM SHAFIQUL KHALID
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

99.   Microsoft and employee form a combination where Microsoft intimidate the employee to give up a patent right; that is a restraint of trade.

100.   Defendant(s) claimed plaintiff patent on bad faith. An assertion of rights to intellectual property that is on bad faith and/or based on fraud is a restraint of trade.

**(Count II - Violation of Section 2 of Sherman Act)**

101.   Plaintiff hereby incorporates paragraphs 1 through 90.

102.   Defendant Microsoft has a monopoly power by itself and through its partners in multiple technology areas like Office Productivity Software, Desktop Operating Systems, Cloud Computing.

103.   Microsoft unlawfully claimed Plaintiff's patent to expand its market share to gain monopoly power or to maintain monopoly power. A patent also comes with monopoly power on its own and Microsoft tried to acquire that power embedded in 219 and 637 patent illegally.

104.   Those conducts are attempted monopoly or to maintain monopoly, and either of the two are a violation of Section 2 of the Sherman Act.

**(Count III - Defendant Violated Racketeering Act through Extortion**

**18 U.S.C. § 1964)**

105.   Plaintiff(s) hereby incorporates paragraphs 1 through 90.

106.   To state a claim under Rico, a plaintiff must allege four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. Plaintiff(s) allege them as follows:

COMPLAINT
KHALID v MICROSOFT
Page 25 of 34

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

107. First, Defendant(s) participated in an enterprise or associate-in-fact enterprise to create intellectual property, transfer valuable rights and benefits from those intellectual properties to the enterprise, and then sent royalty and other benefits to the enterprise.

108. Second, Defendant has offshore operations and is receiving benefit from intellectual properties Defendant(s) acquired through extortion, fraud, and violating laws. Such operations have become a Rico enterprise.

109. Defendant's offshore operations are helped by some associates like Appleby law firm located in Hamilton Bermuda or similar sharing knowledge and other logistics that aid and abet Defendant(s) to move financial assets backed by intellectual property for tax advantages. Defendants association in those offshoring programs became Rico association-in-fact enterprise.

110. Defendant(s) have an IP licensing program as a separate entity that has become Rico association-in-fact enterprise. That licensing program has a separate corporate structure to remove liability from Microsoft, and Microsoft set that up for this particular purpose.

111. Defendant(s) have an IP sharing partnership with partners and vendors receiving benefits from intellectual properties, those partnerships together have become a Rico association-in-fact enterprise.

112. Third, Defendant(s) used thousands of employee agreements over an extended period of time to acquire intellectual properties from employees, and those activities are ongoing and open-ended.

113. Miki Mullor's statement on January 30, 2009, proves Microsoft tried to get Miki's patent right to protect certain Microsoft partners. Another Microsoft partner, Citrix, conducted very

COMPLAINT
KHALID v MICROSOFT
Page 26 of 34

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA 98052
(425) 445-7157

1    similar actions where both Microsoft and Citrix claimed benefit from such conducts. Those

2    incidents form a pattern of conduct.

3  114. Fourth, Defendant(s) has employed a specific scheme to acquire intellectual properties

4       through extortion and fraud through an employee agreement with an illegal and/or unlawful

5       assignment provision of patent rights.

6

7  115. Microsoft also mislead Plaintiff here in the present case using emails constituting email

8       fraud.  On one email, Microsoft represented that Plaintiff  could submit a patent exclusion

9       list, then Microsoft confirmed receipt of the exclusion list  over email, then  a few years later,

10      over email, claimed that patent exclusion list he submitted didn't exist. This is part of scheme

11      Microsoft uses to grab employee patent. Citrix conducted a similar pattern by contacting

12      Khalid over emails that Citrix has rights in Khalid patents that they didn't actually have.

13

14

15               **(Count IV – Cause of Action Under 18 USC § 1595(a))**

16  116. Plaintiff hereby incorporates paragraphs 1 through 90.

17  117. Defendant employed multiple employee recruiters and attorneys who conspired to or carried

18      out Microsoft policy by telling Khalid that unless Khalid grants Microsoft royalty-free

19      license Khalid can't tell his investors in an attempt to cause fear. Microsoft also contended

20      Khalid didn't submit any exclusion list and therefore Microsoft became an owner of Khalid's

21      patent.

22

23  118. Microsoft, being a multi-billion-dollar company, calculated that Khalid would coward down

24      and not wage  a legal battle against the giant, Microsoft.

25

26

COMPLAINT
KHALID v MICROSOFT
Page 27 of 34

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

119. By doing so, Microsoft created a situation where Plaintiff will continue working on his patent family, add labor to perfect and prosecute his patents, and Defendant(s) Microsoft will get free access to those patents.

120. Plaintiff's free labor, that plaintiff would never offer to Defendant(s) Microsoft voluntarily, constitute a violation of involuntary servitude under 13th amendments. And Defendant's attempts to intimidate Khalid in this situation is considered a violation of attempted violation of 18 USC § 1589 that violate USC § 1594 which is actionable under USC § 1595(a).

### (Count V - Defendant Violated Racketeering ACT

### 18 U.S.C. § 1964 for Actual or Attempted Forced Labor 18 U.S.C. § 1589)

121. Plaintiff hereby incorporates paragraphs 1 through 90.

122. Microsoft other and its partner formed a Rico enterprise.

123. Defendant(s) Microsoft created a situation to secure inventive service from an employee without any payment. Employee labor associated with inventive service can and has been used be well outside the scope of Employment Agreement. Microsoft kept and keeps enough ambiguity in the Employment Agreement, this allowed and allows Microsoft to claim free labor from the Plaintiff, and any inventive employee.

124. Forced labor and attempted forced labor are violations of 18 U.S.C. § 1589 and predicated act of Rico violation.

125. Defendant(s) Microsoft implemented a scheme to secure free labor in multiple instances and from multiple employees who sign an Employment Agreement with Defendant(s). Those activities create patterns.

COMPLAINT
KHALID v MICROSOFT
Page 28 of 34

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

**(Count VI - Microsoft Violated Civil Right Under 42 USC § 1985)**

126.  Plaintiff hereby incorporates paragraphs 1 through 90.

127.  Defendant(s) Microsoft employed multiple employees, recruiters, and attorneys who conspired to have Khalid sign an overbroad Employee Agreement, by offering an employee to submit an invention disclosure, a false pretense, whereby then years later  making claims that Plaintiff(s) Khalid did not submit an invention disclosure, then claiming rights to Khalid's patent family.

128.  By creating this false pretense of an inventive disclosure and or purporting years later to not have the inventive disclosure on file,  Microsoft created a situation where Plaintiff  continued working on his patent family, add his personal labor to perfect and prosecute his patents, and defendant Microsoft, in this set up, will get free access to those patents.

129.  Plaintiff's free labor, that plaintiff would never offer to Microsoft voluntarily, constitute a violation of involuntary servitude under 13th amendments. And because defendant Microsoft employees conspired in an attempt to deprive Khalid of his constitutional right, this gives rise to a violation of 42 USC § 1985.

130.  Microsoft didn't offer any additional compensation for Khalid's patent right. Microsoft's wrongful assertion deprived Khalid of the enjoyment of his patent right protected by Fourteenth Amendment.

**(Count VII – Violated Interest of Class Members Right)**

COMPLAINT
KHALID v MICROSOFT
Page 29 of 34

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

131.  Plaintiff hereby incorporates paragraphs 1 through 90.

132.  All of the employees  who have signed an Employee Agreement with Defendant's, as described and incorporated here within, are together as a class for the purpose of class action.

133.  Microsoft doesn't pay wages from the signing date of the Employee Agreement, yet  uses inventing services from the signing date of the Employee Agreement.

134.  Microsoft retains right to any future invention of an employee in the form of first right of refusal that depletes the value of employee's future invention(s).

135.  Microsoft's use of ambiguous provisions in an employee agreement is a violation of the notice provision of the due process of law afforded as a right under the Fourteenth Amendment of the United State's Constitution, violations of just compensation. Microsoft's attempt to contaminate employee's inventions is an attempt to get free labor that the employee would never render freely to Microsoft, there being is a violation of Involuntary Servitude under Thirteenth Amendments.

136.  Microsoft's Employee Agreement(s) of such described, violated the Sherman Act  and the Racketeering Act injuring employees' rights.

137.  Microsoft inflicted moral injury to the class members by using their intellectual property for offshore tax engineering scheme and not disclosing that to employees.

138.  Class certification is needed to recover damages sustained by class members.


**(Count VIII - Defendant Attempted or Committed Fraud)**


139.   Plaintiff hereby incorporates paragraphs 1 through 90.

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

140. First, Microsoft represented to Plaintiff that as an employee he can make a written exclusion list of his prior inventions and give that list to his recruiter to make such invention excluded from the work assignment obligation to Microsoft under the Employment Agreement . Plaintiff submitted an exclusion list to his recruiter as directed to do.

141. Second, on May 27, 2016, Microsoft said the exclusion list didn't exist, which makes Microsoft's 2011 written representation false. Plaintiff received an acknowledgment from Microsoft in 2011 that such list was received.

142. Third, Plaintiff would never have entered into such an employment agreement had Microsoft told Plaintiff that Microsoft wouldn't preserve the exclusion list as part of the Employment Agreement, but would later claim one or any of his exclusion patents on his submitted exclusion list.

143. Fourth, if Microsoft doesn't preserve such exclusion lists, or is making a false statement to prospective employees, Microsoft should have known such..

144. Fifth, Microsoft intended that Plaintiff would rely on this written representation.

145. Sixth, Plaintiff never thought Microsoft would ever say his exclusion list didn't exist. Plaintiff was naturally ignorant of Microsoft's internal false representation.

146. Seventh, Plaintiff hand signed the 2011 Microsoft Employment Agreement noting the additional pages that include the exclusion list, already with the Microsoft recruiter. Here too, Plaintiff relying on Microsoft's representation.

147. Eighth, Plaintiff relied on Microsoft's written representation, with no reason to believe otherwise.

COMPLAINT
KHALID v MICROSOFT
Page 31 of 34

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

148. Ninth, Plaintiff(s) suffered damage because the Plaintiff(s) couldn't use the patent(s) in the exclusion list for the intended purposes to develop IP licensing and incubation start-up.

**(Count IX – Reserving Right to Add New Claim or Amending Claims)**

149. Plaintiff(s) hereby incorporates paragraphs 1 through 90.

150. Plaintiffs(s) are reserving the right to add new claims and/or to amend any claims in this complaint as the law permits.

## VI.    REQUESTED RELIEF

WHEREFORE, plaintiffs pray for relief as follows:

151. Certify this action for Class Action  under 28 U.S.C. § 1332(d) so that other employees affected by the Defendant(s)'s behavior can join this lawsuit and recover damages along with Plaintiff  for the requested relief.

152. Civil remedies under 15 U.S.C. § 15, 18 U.S.C. § 1964(c), RCW 19.86.090 and RCW 9A.82.100(4)(d) including treble damage, cost, and fees.

153. Damages for fraud or attempted fraud in the amount of actual or probable loss.

154. Damages for back pay, front pay, lost benefits, in an amount to be proven at trial.

155. Damages for loss of patents, and damages for loss of profit in businesses in an amount to be proven at trial. Damages to Startup Company in an amount to be proven at trial.

156. Damages for emotional distress, loss of enjoyment of life, humiliation.

COMPLAINT
KHALID v MICROSOFT
Page 32 of 34

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

157. personal indignity, embarrassment, fear, anxiety, and/or anguish.

158. Injunctive relief and declaratory judgment in Plaintiff's favor.

159. Prejudgment interest in an amount to be proven at trial.

160. Double Damage under RCW 49.52.070 for wage violation including costs and fees.

161. Compensation for the tax penalty associated with any recovery.

162. Costs and legal fees pursuant to RCW 59.18, RCW 49.48.030, and RCW 4.84 or other rules of law and/or equity.

163. Punitive damage for violation of 42 USC § 1985, and constitutional injury for violation of the Thirteenth Amendments and Fourteenth Amendments.

164. Civil penalty under RCW19.86.140.

165. Cost fee damage and punitive damage under 18 USC § 1595.

166. Plaintiff is also looking for protection under the whistleblower laws and/or similar laws so that Defendant(s) can't harass Plaintiff; Plaintiff has a right to the whistleblowing protections and other protections available by law when he notifies various  multiple agencies  to investigate systematic unlawful violations by Microsoft.

167. Penalty for inconvenience and discomfort as authorized under <u>Cherberg v. Peoples Nat'l Bank, 564 P. 2d 1137 - Wash: Supreme Court 1977</u>.

168. Whatever further and additional relief the court shall deem just and equitable.

COMPLAINT
KHALID v MICROSOFT
Page 33 of 34

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

## VII.    DEMAND FOR JURY

Plaintiff(s) hereby demands that this case is tried before SIX or TWELVE  jury.

**SIGNED and DATED** this  __28th___  day of January, 2019.


_____
Plaintiff Pro Se
ATM Shafiqul Khalid
17446 NE 28th ST
Redmond, WA 98052
(425) 445 7157
atmkhalid@gmail.com

COMPLAINT
KHALID v MICROSOFT
Page 34 of 34

ATM SHAFIQUL KHALID
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157