THE HONORABLE RICARDO S. MARTINEZ

1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8
9

ATM SHAFIQUL KHALID, an individual
and on behalf of similarly situated, Xencare
Software, Inc.,

                     Plaintiff,

    v.

MICROSOFT CORPORATION, a
Washington Corporation, John Doe *n*,

                     Defendant(s).

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 2:19-cv-00130

**DEFENDANT MICROSOFT
CORPORATION'S MOTION TO
DISMISS THE AMENDED
COMPLAINT FOR FAILURE TO
STATE A CLAIM**

Note on motion calendar:
June 28, 2019

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

DEFENDANT MICROSOFT CORPORATION'S MOTION
TO DISMISS AMENDED COMPLAINT
Case No. 2:19-cv-00130

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b), defendant Microsoft Corporation ("Microsoft" or the "Defendant") hereby seeks an order dismissing with prejudice Plaintiff ATM Shafiqul Khalid's (the "Plaintiff") Amended Complaint for Damages for Antitrust, Racketeering, Class Action for failure to state a claim.

## I.   INTRODUCTION

This case concerns the validity and enforceability of provisions in employment agreements between Microsoft and its employees, which assign intellectual property rights to Microsoft as a condition of employment. As Plaintiff himself notes, such assignment provisions are extremely common; companies all over the country, in many different fields, routinely require their employees to assign certain patent and other intellectual property rights as a condition of employment. And not surprisingly, given their prevalence, courts have consistently found these assignment provisions to be enforceable. *See, e.g.*, *Preston v. Marathon Oil Co.*, 684 F.3d 1276, 1279, 1284-89 (Fed. Cir. 2012) (holding valid and enforceable patent-rights assignment provision in employment agreement that assigned inventions "made or conceived" during term of employment unless excluded in list of previous inventions); *Winston Research Corp. v. Minnesota Min. & Mfg. Co.*, 350 F.2d 134, 145-46 (9th Cir. 1965) (affirming enforcement of provision that "required [employee] to assign to [employer] inventions conceived during employment"); *IMATEC, Ltd. v. Apple Computer, Inc.*, 15 F. App'x 887 (Fed. Cir. 2001) (enforcing similar patent-rights assignment provision); *Saba N. Am., LLC v. Bossardet*, No. C09-0899JLR, 2010 WL 2028087, at *5 (W.D. Wash. May 18, 2010) (enforcing "agreement to assign to [employer] all inventions and patents undertaken by [employee] while in the employ of [employer]" beyond termination of the Employment Agreement).

Notwithstanding the well-established enforceability of these provisions, Plaintiff has brought a host of ill-fitting legal claims that challenge them indirectly. These claims sound in everything from antitrust, RICO, and forced labor to civil rights violations and fraud, each premised on a vaguely alleged "wrongful patent grabbing scheme" by Microsoft. Plaintiff claims that Microsoft is unlawfully exploiting at-will employees' labor through intellectual property

DEFENDANT MICROSOFT'S MOTION TO DISMISS
AMENDED COMPLAINT - 1
Case No. 2:19-CV-00130

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

1   assignment provisions, allegedly by destroying or failing to properly maintain lists submitted by

2   new hires identifying inventions over which the employee claims ownership.

3          As a factual matter this is absolutely false; Microsoft is not engaged in any such patent

4   grabbing scheme. But even at the pleading stage, Plaintiff's claims are fundamentally flawed.

5   For the reasons discussed below, Plaintiff has failed to state any claim upon which relief may be

6   granted, and any effort to replead his claims would be futile.  Accordingly, Microsoft respectfully

7   asks that the Court dismiss the Amended Complaint in its entirety with prejudice.

8   **II.      BACKGROUND**

9          Microsoft was founded in 1975 and became a significant player in the personal computing

10  market in the mid-1980s. Amended Complaint (Dkt. #7) ("AC") ¶ 11. Since then it has grown

11  into one of the world's largest software makers and most valuable companies, "an American

12  multinational technology company … that develops, manufactures, licenses supports and sells

13  computer software, consumer electronics and personal computers and services" worldwide. *Id.*

14  Plaintiff alleges that he is a "very creative engineer" and "an expert in the area of Computer

15  software, Operating Systems, Cloud and virtualization with 20+ years experience." *Id.* ¶ 12. He

16  worked for Microsoft from 1998 to 2006, and then again from January 9, 2012 to February 2015

17  (the period of employment at issue here). *Id.* ¶ 17, 21. In between, he worked for Microsoft

18  partner Citrix Systems, Inc. *Id.* ¶ 49 & Ex. G, at 2.

19         On December 16, 2011, Microsoft offered Plaintiff a job as a Senior Program Manager

20  in its Bing division. *Id.* ¶ 13. Microsoft recruiter Shannon Carlsen asked Plaintiff to sign a

21  Microsoft Employee Agreement (the "Employee Agreement"), which included a standard

22  provision assigning certain of Plaintiff's intellectual property rights:

23         **5.  Inventions.** I will promptly and fully disclose to MICROSOFT
            any and all inventions . . . whether or not patentable (collectively
24         "Inventions") that I solely or jointly may conceive, develop,
            reduce to practice or otherwise produce during my employment
25         with MICROSOFT, including those Inventions I contend that
            MICROSOFT does not own.  Subject to the NOTICE below, I
26         agree to grant and I hereby grant, transfer and assign to
            MICROSOFT or its designee all my rights, title and interest in
27         and to such Inventions. . . .

DEFENDANT MICROSOFT'S MOTION TO DISMISS
AMENDED COMPLAINT - 2
Case No. 2:19-CV-00130

**NOTICE:** My obligation to assign shall not apply to any Invention that I can establish:

> a) was developed entirely on my own time without using any equipment, supplies, facilities, or trade secret information owned or supplied to me by Microsoft;
>
> b) does not relate (i) directly to the business of MICROSOFT or (ii) to the actual or demonstrably anticipated research or development of MICROSOFT; and
>
> c) does not result, in whole or in part, from any work performed by me for MICROSOFT.
>
> . . . . In addition to the rights provided to MICROSOFT under paragraph 6 below, as to any Invention complying with 5(a)-(c) above that results in any product, service or development with potential commercial application, MICROSOFT shall be given the right of first refusal to obtain exclusive rights to the Invention and such product, service or development….

*Id.* ¶¶ 13-14 & Ex. A. Paragraph 6 ("Excluded and Licensed Inventions") declares: "I have attached a list describing all Inventions belonging to me and made by me prior to my employment with MICROSOFT that I wish to have excluded from this Agreement. If no such list is attached, I represent that there are no such Inventions." *Id.* ¶ 15 & Ex. A. And at the top of the first page of the Employee Agreement, a note states: "If you wish to attach a list of inventions, per paragraph 6, please contact your recruiter." *Id.* ¶ 13 & Ex. A.

On December 19, 2011, Plaintiff accepted the offer of employment and signed the Employment Agreement. *Id.* ¶ 16. He claims to have separately sent an email to Ms. Carlsen attaching an Invention exclusion list (the "Exclusion List") that included nine patentable items with short descriptions, including the "Mini Cloud" (or "'637") patent application and the "Safe and Secure" (or "'219") patent application. *Id.* ¶¶ 16, 18.

After finalizing the relevant paperwork, Plaintiff started his second stint at Microsoft on January 9, 2012 and worked there until his employment was terminated in February 2015. *Id.* ¶¶ 17, 21.  During his second period of employment at Microsoft, Plaintiff alleges that he continued to work on the Mini Cloud and Safe and Secure patent inventions. *Id.* ¶¶ 24, 29, 32-35. According to Plaintiff, the Mini Cloud patent was issued in 2014 and comprises

DEFENDANT MICROSOFT'S MOTION TO DISMISS
AMENDED COMPLAINT - 3
Case No. 2:19-CV-00130

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

several components: a thin, Roku-like stick terminal that can be inserted into any monitor and can then connect to a cloud-based subscription provider as well as "a mini-cloud host device to deliver computing resources with specific integration techniques." *Id.* ¶¶ 19, 25. Although Plaintiff has not brought a patent infringement claim, he asserts that Microsoft's Xbox One infringes the Mini Cloud patent, in that it directly uses all the components in the '637 patent or "uses components in an equivalent way that infringes on the 637 patent." *Id.* ¶¶ 25, 60.

Plaintiff's employment was terminated by Microsoft in February 2015. *Id.* ¶ 36. On February 19, 2015, in response to an email from Plaintiff regarding his termination and the Safe and Secure and Mini Cloud patents, an in-house Microsoft attorney pointed out that Paragraphs 5 and 6 of Plaintiff's Employee Agreement set out his obligation to assign intellectual property rights to Microsoft and that no Exclusion List was attached to his agreement. *Id.* ¶ 40 & Ex. F. Plaintiff responded, stating that he had submitted an Exclusion List that included those two patents when he signed his Employee Agreement. *Id.*

A lengthy dialogue ensued, in which Plaintiff continued to assert that he had submitted an Exclusion List with his Employee Agreement and Microsoft reiterated its position that it could not locate any such list following a thorough search. *Id.* ¶¶ 41-48 & Exs. F-G. On May 27, 2016, Microsoft's outside counsel sent a formal letter again stating Microsoft's position that it owned the patents at issue under the terms of the Employee Agreement, and that at a minimum Plaintiff had granted Microsoft a royalty-free license to the Mini Cloud and Safe and Secure inventions. *Id.* ¶¶ 49-50 & Ex. G. Outside Counsel also disputed Plaintiff's assertion that Microsoft's Xbox One infringed the Mini Cloud patent, pointing out that Xbox 360 and Xbox Live (earlier Xbox models) were actually in existence prior to the priority date of the Mini Cloud patent and that Plaintiff had knowledge of both by virtue of his employment at Microsoft. *Id.* Ex. G, at 2. Finally, outside counsel offered to transfer all of Microsoft's ownership interest in the Safe and Secure and Mini Cloud patent families to Plaintiff in exchange for his granting Microsoft a non-exclusive, royalty-free license to the disputed patent families and fully releasing Microsoft from

DEFENDANT MICROSOFT'S MOTION TO DISMISS
AMENDED COMPLAINT - 4
Case No. 2:19-CV-00130

1    all claims and liability. *Id.* at 3-4.

2        Plaintiff declined that offer in May 2016, but now claims that as a result of this ongoing,

3    unresolved patent-ownership dispute, he has been unable to secure financing or investments for

4    his business efforts to monetize these patent technologies. *Id.* ¶¶ 36-39, 50.

5        On January 28, 2019, Plaintiff filed complaints both in this court and in state court,

6    asserting more than twenty different state and federal causes of action based on the same factual

7    allegations. *See Khalid v. Microsoft*, Civil No. 19-2-02755-0 SEA (King Cty. Sup. Ct.). Many of

8    the claims in these two actions are duplicative or significantly overlap; indeed, Plaintiff has

9    brought antitrust, racketeering, and fraud claims in both suits.

10   **III.    STANDARD OF REVIEW**

11       To survive a Rule 12(b)(6) motion, a plaintiff must plead facts "that allow[] the court to

12   draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*

13   *v. Iqbal*, 556 U.S. 662, 678 (2009). Importantly, these "[f]actual allegations must be enough to

14   raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

15   (2007). "Where a complaint pleads facts that are merely consistent with a defendant's liability,

16   it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556

17   U.S. at 678 (internal quotation marks omitted). Thus, "[a] complaint that alleges only 'labels

18   and conclusions' or a 'formulaic recitation of the elements of the cause of action' will not survive

19   dismissal." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1034 (9th Cir. 2011);

20   *see also Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir.

21   2011) ("plausibility" requirement applies to all elements, including scienter). In assessing the

22   sufficiency of the complaint, courts are "not required to accept as true conclusory allegations

23   which are contradicted by documents referred to in the complaint." *Steckman v. Hart Brewing,*

24   *Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998). "Nor is the court required to accept as true

25   allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

26   inferences." *Sprewell v. Golden State Warriors, et al.*, 266 F.3d 979, 988 (9th Cir. 2001).

27       In addition, to the extent that a claim sounds in fraud, it must meet the heightened

DEFENDANT MICROSOFT'S MOTION TO DISMISS
AMENDED COMPLAINT - 5
Case No. 2:19-CV-00130

pleading standard of Federal Rule of Civil Procedure 9(b).  Rule 9(b) requires the plaintiff to "state with particularity the circumstances constituting fraud or mistake," including "the who, what, when, where, and how of the misconduct charged." *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010). "Rule 9(b) serves not only to give notice to defendants of the specific fraudulent conduct against which they must defend, but also to deter the filing of complaints as a pretext for the discovery of unknown wrongs, to protect [defendants] from the harm that comes from being subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis." *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001).

Finally, the decision whether to grant plaintiff leave to amend a deficient complaint is left to the sound discretion of the court. Dismissal with prejudice is appropriate where amendment "would fail to cure the pleading deficiencies and amendment would be futile." *Cervantes*, 656 F.3d at 1041; *see also Williams v. Nat'l Football League*, 671 F. App'x 424, 425 (9th Cir. 2016) (affirming dismissal of *pro se* plaintiff's claims without leave to amend).

## IV.   PLAINTIFF CANNOT STATE AN ANTITRUST CLAIM (Counts 1 & 2)

### A.   *Section 1 of the Sherman Act*

Section 1 of the Sherman Act prohibits "[e]very contract, combination ... or conspiracy, in restraint of trade or commerce among the several States" (15 U.S.C. § 1), but courts have long interpreted this statute as outlawing only *unreasonable* restraints of trade. *See NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 133 (1998). Thus, to state a claim under Section 1, a plaintiff must allege "(1) an agreement, conspiracy, or combination among two or more persons or distinct business entities; (2) which is intended to harm or unreasonably restrain competition; and (3) which actually causes injury to competition, beyond the impact on the claimant, within a field of commerce in which the claimant is engaged (i.e., 'antitrust injury')." *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 811 (9th Cir. 1988). Plaintiff has not met any of these pleading requirements.

First, Plaintiff has not actually alleged an agreement or conspiracy. "Because § 1 of the Sherman Act 'does not prohibit [all] unreasonable restraints of trade . . . but only restraints

DEFENDANT MICROSOFT'S MOTION TO DISMISS
AMENDED COMPLAINT - 6
Case No. 2:19-CV-00130

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

*effected by a contract, combination, or conspiracy*,' '[t]he crucial question' is whether the challenged anticompetitive conduct 'stem[s] from independent decision or from an agreement, tacit or express.'" *Twombly*, 550 U.S. at 553 (internal citations omitted) (emphasis added). Here, Plaintiff alleges only that Microsoft has taken various actions that he characterizes as improper restraints of trade; he has not alleged any agreement, combination, or conspiracy in this respect between Microsoft and any other specific individuals or entities. *See, e.g.*, *Lucas v. Citizens Commc'ns Co.*, 244 F. App'x 774, 777 (9th Cir. 2007) ("Section 1 of the Sherman Act is concerned only with unlawful restraints imposed pursuant to arrangements between two or more actors; KE's unilateral action in fixing maximum price restraints does not fall within the bounds of conduct prohibited under § 1.").

Nor has Plaintiff adequately alleged unreasonable restraint of trade under either a *per se* rule of illegality or a rule of reason. Restraint of trade in and of itself is not forbidden, only unlawful restraint that harms competition. As the Ninth Circuit has explained, "[c]ertain kinds of agreements will so often prove so harmful to competition and so rarely prove justified that the antitrust laws do not require proof that an agreement of that kind is, in fact, anticompetitive in the particular circumstances. An agreement of such a kind is unlawful *per se*." *Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096, 1101 (9th Cir. 1999). Thus, "[h]orizontal price-fixing, market division, and certain types of group boycotts are unlawful *per se*. Other alleged violations are subject to 'rule of reason' analysis," which weighs all the circumstances to decide "whether particular concerted conduct unreasonably restrains competition." *Id.* (internal citations omitted).

Plaintiff makes the bare assertion that the Employee Agreement is a "restraint of trade that [is] per se unlawful" (AC ¶ 2); he also alleges in a conclusory fashion that Microsoft has unreasonably restrained trade by "tying" the patent assignment provision with Microsoft's Employee Agreement,[1] and by allegedly claiming Plaintiff's patent in bad faith and through

---

[1] This is not the type of "tying" at issue in a Sherman Act "tying" claim. *See, e.g.*, *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1199 (9th Cir. 2012) ("Tying is defined as an arrangement where a supplier agrees to sell a buyer a product (the tying product), but only on the condition that the buyer also purchases a different (or tied) product.").

DEFENDANT MICROSOFT'S MOTION TO DISMISS
AMENDED COMPLAINT - 7
Case No. 2:19-CV-00130

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

intimidation. None of these alleged "restraints" are of the type courts have found to be illegal *per se*. Nor are they unreasonable under the rule of reason, even taking as true all of Plaintiff's factual allegations. It is both lawful and common for employment agreements to include an intellectual-property assignment of rights provision of the type at issue here. *See supra* Section I. Plaintiff also has not alleged any facts that would make it *plausible*, as opposed to merely possible, that Microsoft's claim of patent rights is in bad faith.

Finally, even if Plaintiff could satisfy the first two elements, Plaintiff has not alleged any "antitrust injury"—that is, injury to competition in the marketplace, as opposed to the individual plaintiff, flowing from the allegedly illegal conduct. As the Supreme Court has often stated, "[t]he antitrust laws . . . were enacted for the protection of competition not competitors." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 488 (1977); *see also Spectrum Sports, Inc. v. McQuillan,* 506 U.S. 447, 458 (1993) ("The purpose of the [Sherman] Act is not to protect businesses from the working of the market; it is to protect the public from the failure of the market."). Thus, "[p]roving injury to competition in a rule of reason case almost uniformly requires a claimant to prove the relevant market and to show the effects upon competition within that market." *Big Bear Lodging*, 182 F.3d at 1101. Plaintiff here has done neither: he has not specifically identified the "relevant market" for either of his antitrust claims, nor has he shown how the challenged conduct has in any way injured competition in a particular market. The only injuries even vaguely alleged are to Plaintiff himself and his potential business. This is fatal to both of Plaintiff's antitrust claims. *See, e.g.*, *Lucas*, 244 F. App'x at 776 (dismissing Section 1 and 2 claims because plaintiff "fails to 'allege and prove harm, not just to a single competitor, but to the competitive process, *i.e.,* to competition itself.'").

### B.    Section 2 of the Sherman Act

Plaintiff's Section 2 claim fails for many of the same reasons. *See Williams v. I.B. Fischer Nevada,* 999 F.2d 445, 448 (9th Cir. 1993) (where conduct alleged in support of Section 1 claim is found not to be anticompetitive, Section 2 claim based on same conduct must also fail).

"A Section 2 monopolization claim requires proof of three things: First, that the

DEFENDANT MICROSOFT'S MOTION TO DISMISS
AMENDED COMPLAINT - 8
Case No. 2:19-CV-00130

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

[Defendant] possessed monopoly power in the relevant market; second, that the [Defendant] acquired or maintained that power willfully, rather than 'as a consequence of a superior product, business acumen or historical accident'; and third, that the [Plaintiffs] suffered a causal antitrust injury." *Sicor Ltd. v. Cetus Corp.*, 51 F.3d 848, 855 (9th Cir. 1995) (internal citations omitted). Similarly, "[t]o establish a Sherman Act § 2 violation for attempted monopolization, a private plaintiff … must demonstrate four elements: (1) specific intent to control prices or destroy competition; (2) predatory or anticompetitive conduct directed at accomplishing that purpose; (3) a dangerous probability of achieving 'monopoly power'; and (4) causal antitrust injury." *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1432-33 (9th Cir. 1995).   It is unclear if Plaintiff's spare allegations here are asserting monopolization or attempted monopolization, but either theory requires, among other things, that he carefully and specifically define the relevant "market," and that he plead a cognizable antitrust injury flowing from the challenged conduct. Plaintiff fails adequately to allege these or any of the other requisite elements.

Rather than define a particular "market" for his Section 2 claim, Plaintiff broadly alleges that Microsoft has a "monopoly power . . . in multiple technology areas like Office Productivity Software, Desktop Operating Systems, Cloud Computing." AC ¶ 102. This is plainly insufficient, either to put Microsoft on notice as to the basis of Plaintiff's claim, or to lay the necessary foundation for analysis under Section 2. *See, e.g.*, *Rebel Oil*, 51 F.3d at 1434 ("Market definition is crucial. Without a definition of the relevant market, it is impossible to determine market share."). While Microsoft does enjoy significant market *share* in some markets, Plaintiff has not alleged any facts tending to show that this market share translates into the market dominance required for a monopolization claim in a particular market. *See id.* at 1439 ("A mere showing of substantial or even dominant market share alone cannot establish market power sufficient to carry out a predatory scheme. The plaintiff must show that new rivals are barred from entering the market and show that existing competitors lack the capacity to expand their output to challenge the predator's high price."). And without a properly defined "market," it is impossible to show

DEFENDANT MICROSOFT'S MOTION TO DISMISS
AMENDED COMPLAINT - 9
Case No. 2:19-CV-00130

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

"a dangerous probability of achieving 'monopoly power'" in that market, as is required for an attempted monopolization claim.

As previously discussed, Plaintiff also has not adequately alleged any antitrust injury. "[R]eduction of competition does not invoke the Sherman Act until it harms consumer welfare." *Id.* at 1433. The Complaint does not identify or describe any way in which Microsoft has allegedly used market power—in any specific market—to restrain competition to the detriment of consumers. Instead, read most generously, it alleges only that Plaintiff's own business prospects have been harmed by Microsoft's assertion of rights in certain of Plaintiff's inventions. This is not the type of injury that can ground an antitrust claim.

The Amended Complaint's allegations are equally insufficient regarding the other required elements. Plaintiff has not even attempted to show that Microsoft acquired or maintained its market power (in any potentially relevant market) "willfully, rather than as a consequence of a superior product, business acumen or historical accident." *Sicor*, 51 F.3d at 855.  Nor, with respect to attempted monopolization, has Plaintiff alleged any facts tending to show either a "specific intent" to destroy competition or "predatory or anticompetitive conduct" directed at that purpose. Absent specific, factual allegations tending to show that Microsoft's success was achieved "willfully" through exclusionary behavior, the mere fact of its success does not support an antitrust claim.

Indeed, the only allegation specifically directed at monopolization is Plaintiff's conclusory assertion that "Microsoft unlawfully claimed Plaintiff's patent to expand its market share to gain monopoly or to maintain monopoly power." AC ¶ 103. Read most generously, this appears to invoke the "*Walker Process*" line of cases, in which the Supreme Court held that "the enforcement of a patent procured by fraud on the Patent Office may be violative of § 2 of the Sherman Act provided the other elements necessary to a § 2 case are present." *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*, 382 U.S. 172, 174 (1965). However, this line of cases has no relevance where, as here, no fraud on the patent office or bad-faith enforcement lawsuit—or *any* enforcement suit, for that matter—is alleged. *See, e.g., California*

DEFENDANT MICROSOFT'S MOTION TO DISMISS
AMENDED COMPLAINT - 10
Case No. 2:19-CV-00130

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

*E. Labs., Inc. v. Gould*, 896 F.2d 400, 402-03 (9th Cir. 1990) (affirming dismissal in part because "[Plaintiff] has not alleged that [Defendant] actually attempted to enforce the patents. . . . Without some effort at enforcement, the patent cannot serve as the foundation of a monopolization case.").

Because both of Plaintiff's Sherman Act claims are flawed in fundamental ways—e.g., he cannot allege antitrust injury, and cannot show that the use and enforcement of valid patent-rights assignment provisions constitutes unreasonable restraint of trade or predatory conduct—any effort at repleading would be futile, and these claims should be dismissed with prejudice.

## V.   PLAINTIFF FAILS TO STATE A CLAIM FOR ACTUAL OR ATTEMPTED FORCED LABOR (Count 4)

Though far from clear, it appears Plaintiff is asserting that Microsoft has secured free "forced" labor from him by claiming that it owns his patents pursuant to the patent-rights assignment provision in the Employee Agreement and that he cannot tell potential investors that he is the sole owner unless he grants Microsoft a royalty-free license to resolve their ownership dispute. AC ¶ 117.  This simply is not "forced labor" as a matter of law.

The Trafficking Victims Protection Act ("TVPA"), which Plaintiff invokes, makes it a crime "knowingly" to "provide[] or obtain[] the labor or services of a person" by means of, among other things, "serious harm or threats of serious harm to that person or another person." 18 U.S.C. § 1589(a).[2]  The statute was intended by Congress "to address serious trafficking, or cases 'where traffickers threaten harm to third persons, restrain their victims without physical violence or injury, or threaten dire consequences by means other than overt violence.' H.R.Rep. No. 106–939, at 101H.R.Rep. No. 106–939, at 101, 2000 U.S.C.C.A.N. at 1392–93 (Conf.Rep.)." *United States v. Dann*, 652 F.3d 1160, 1170 (9th Cir. 2011).  The situation here is nothing like the "forced labor" addressed by the TVPA. *See, e.g.*, *Alvarado v. Universidad Carlos Albizu*, No. 10-22072-CIV, 2010 WL 3385345, at *4 (S.D. Fla. Aug. 25, 2010) (noting that "[t]ypical § 1589

---

[2]  "Serious harm" is defined as "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm." *Id.* § 1589(c)(2).

DEFENDANT MICROSOFT'S MOTION TO DISMISS
AMENDED COMPLAINT - 11
Case No. 2:19-CV-00130

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

1   cases involve use of force, threats of violence, fraud, and coercion that prevent the

2   employee/traffickee from having viable exit options," and concluding that plaintiff who was not

3   trafficked, earned a healthy salary, and enjoyed same employment rights as any other alien

4   resident failed to state forced labor claim).

5          Here, no "serious harm," actual or potential, is alleged, and Plaintiff has not alleged any

6   facts tending to show scienter. "In applying the [TVPA], [courts] must distinguish between

7   improper threats or coercion and permissible warnings of adverse but legitimate consequences."

8   *Headley v. Church of Scientology Intern.*, 687 F.3d 1173, 1180 (9th Cir. 2012). The only "threat"

9   Plaintiff articulates—that Microsoft told Plaintiff he could not tell investors that Microsoft had

10  no interest in his patents unless he gave Microsoft a royalty-free license—was not an improper

11  threat intended to secure forced labor, but a statement of fact regarding Microsoft's understanding

12  of its legal rights under the Employee Agreement.  Plaintiff has not alleged any facts—as opposed

13  to conclusory assertions—indicating that Microsoft did not believe that it had an ownership right

14  in Plaintiff's patents, or that it intended for Plaintiff to fear "serious harm" of any kind. *See Dunn*,

15  652 F.3d 1160, 1170 (9th Cir. 2011) ("The linchpin of the serious harm analysis under § 1589 is

16  not just that serious harm was threatened but that the employer intended the victim to believe that

17  such harm would befall her.").

18         In short, Plaintiff's "forced labor" claim does not satisfy the elements or fit the intent of

19  the statute it invokes. This claim should be dismissed with prejudice.

20  **VI.    PLAINTIFF FAILS TO STATE A RACKETEERING CLAIM UNDER 18 U.S.C.
          § 1964 (Counts 3 & 5)**

21

22         Plaintiff has brought two different claims under the federal Racketeer Influenced and

23  Corrupt Organizations Act ("RICO"), premised on predicate acts of "extortion," mail fraud, and

24  forced labor. As discussed above, Plaintiff's forced labor claim necessarily fails and therefore

25  cannot ground a racketeering claim. Plaintiff's racketeering claims based on extortion and mail

26  fraud are equally flawed.

27

DEFENDANT MICROSOFT'S MOTION TO DISMISS
AMENDED COMPLAINT - 12
Case No. 2:19-CV-00130

"The elements of a civil RICO claim [under 18 U.S.C. §§ 1962(c) & 1964][3] are as follows: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's business or property." *United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Const. Trades Dep't, AFL-CIO*, 770 F.3d 834, 837-38 (9th Cir. 2014). The requisite "racketeering activity" (or predicate acts) is defined as including, among other things, mail and wire fraud, forced labor, and "extortion," defined in the Hobbs Act as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). Because RICO violations are predicated on criminal conduct, a civil plaintiff must plead all of the necessary elements for each predicate act, including the requisite level of scienter. And to the extent that a predicate act sounds in fraud, it must meet the heightened pleading standard of Rule 9(b). *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir.1991).

Interpreted most generously, Plaintiff appears to claim that Microsoft conducts a "RICO association-in-fact enterprise" through a pattern of requiring employees as a condition of employment to sign "extortionate" employee agreements that include a patent-rights assignment clause like the one Plaintiff signed. This theory cannot support a racketeering claim for multiple reasons.

First, Plaintiff cannot plead the requisite "enterprise," which must be separate and distinct from the individual corporate defendant and its employees. *Reves v. Ernst & Young,* 507 U.S. 170, 185 (1993); *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1534 (9th Cir. 1992). "To show the existence of an enterprise … plaintiff[] must plead that the enterprise has (A) a common purpose, (B) a structure or organization, and (C) longevity necessary to accomplish the purpose." *Eclectic*

---

[3] Plaintiff also invokes 18 U.S.C. § 1962(d) once early in the Complaint (AC ¶ 3), but the specific allegations in Counts 3 and 5 appear instead to be asserting claims for "conducting or participating in" an enterprise, under § 1962(c).  To the extent the Complaint is construed as asserting a claim under § 1962(d), it fails for the same reasons outlined above with respect to § 1962(c), and for the additional reason that Plaintiff has not adequately pleaded the elements of conspiracy. *See Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 559 (9th Cir. 2010) (affirming dismissal with prejudice of RICO conspiracy claim under § 1962(d) because plaintiff failed to plead a substantive violation under § 1962(c)).

DEFENDANT MICROSOFT'S MOTION TO DISMISS
AMENDED COMPLAINT - 13
Case No. 2:19-CV-00130

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

*Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014). Moreover, this showing of commonality and coordination must go beyond the level of cooperation inherent in typical commercial relationships. *See, e.g.*, *United Food & Commercial Workers Unions & Employers Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 854-55 (7th Cir. 2013) ("enterprise" allegations insufficient where they failed to show that defendants involved themselves in each other's business beyond their usual commercial relationship). Here, Plaintiff has not even specifically identified the groups or individuals with whom he claims Microsoft has formed an "association in fact enterprise," much less alleged a common purpose, a structure or organization, or anything concerning necessary longevity. The interactions he vaguely describes appear to be typical commercial transactions between Microsoft and various professional service organizations who provide Microsoft with tax and intellectual property related services. This is insufficient as a matter of law.

Plaintiff also fails to allege a pattern of racketeering, based on multiple predicate acts of extortion or mail fraud. The patent-rights assignment provision in the Employee Agreement is both lawful and common, and requiring potential at-will employees to sign it as a condition of employment does not constitute extortion. Likewise, enforcing a valid assignment-of-rights provision in an employment agreement is not a wrongful means of obtaining property, but a lawful effort to secure and protect legitimate property rights. *See United States v. Enmons,* 410 U.S. 396, 400 (1973) (violation only "where the obtaining of the property would itself be 'wrongful' because the alleged extortionist has no lawful claim to that property").

The only other predicate act Plaintiff alleges is "email fraud": he claims that Microsoft fraudulently represented that Plaintiff could preserve his ownership interest in preexisting inventions by submitting an Exclusion List, and then years later claimed that it had no record of the Exclusion List he allegedly submitted. AC ¶ 115. Mail fraud requires a showing of: "(1) formation of a scheme or artifice to defraud; (2) use of the United States mails or wires … in furtherance of the scheme; and (3) specific intent to deceive or defraud." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 557 (9th Cir. 2010). Under Rule 9(b), the factual

DEFENDANT MICROSOFT'S MOTION TO DISMISS
AMENDED COMPLAINT - 14
Case No. 2:19-CV-00130

1    circumstances of the fraud must be alleged with particularity; specific intent may be alleged

2    generally, but it must still be supported by factual allegations that make the inference of scienter

3    "plausible." *See, e.g., Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 968 (N.D. Cal. 2008)

4    ("[N]othing in the Federal Rules of Civil Procedure relieves a plaintiff of the obligation to 'set

5    forth facts from which an inference of scienter could be drawn.'"); *Ally Bank v. Castle,* No. 11–

6    896, 2012 WL 3627631, at *5 (N.D. Cal. Aug. 20, 2012) ("[K]nowledge must still be pleaded

7    sufficiently to make entitlement to relief plausible.").

8           Plaintiff has not alleged any facts that would make the inference *plausible*, as opposed to

9    merely possible, that Microsoft had a specific intent to deceive when, allegedly, one employee

10   acknowledged receipt of Plaintiff's Exclusion List and several years later a different employee

11   had no record of that list. Indeed, Plaintiff himself seems to acknowledge that Microsoft may

12   simply have misplaced the Exclusion List he claims to have submitted, rather than systematically

13   and intentionally stealing intellectual property from its employees. AC ¶ 78. Where, as here, there

14   is nothing—no factual allegations, direct or circumstantial—that would tend to make specific

15   fraudulent intent plausible, dismissal is appropriate. *See, e.g.*, *Eclectic Properties*, 751 F.3d at

16   1000 (affirming RICO dismissal because the "factual allegations do not support a plausible

17   inference that Defendants had the required specific intent to defraud, nor do they tend to exclude

18   the alternative explanation that the transactions were merely a group of business deals gone bad

19   during a deep recession").

20          Finally, even if this one isolated instance of alleged error by Microsoft could be construed

21   as mail fraud, Plaintiff still has failed to allege a "pattern" of such conduct. *See* 18 U.S.C.

22   § 1961(5) ("requir[ing] at least two acts of racketeering activity"); *Sedima, S.P.R.L. v. Imrex Co.*,

23   473 U.S. 479, 496 n.14 (1985) ("[W]hile two acts are necessary, they may not be sufficient....

24   The legislative history supports the view that two isolated acts of racketeering activity do not

25   constitute a pattern."). Because Plaintiff cannot plead the requisite elements under RICO,

26   repleading would be futile and these claims should be dismissed with prejudice.

27

DEFENDANT MICROSOFT'S MOTION TO DISMISS
AMENDED COMPLAINT - 15
Case No. 2:19-CV-00130

## VII.   PLAINTIFF FAILS TO STATE A CLAIM FOR VIOLATION OF HIS CIVIL RIGHTS (Counts 6 & 12)

As a preliminary matter, Plaintiff's § 1983 and § 1985 claims are barred by the applicable three-year statute of limitations, since no later than February 19, 2015 Plaintiff was aware that Microsoft was asserting that he had not submitted an Exclusion List with his Employee Agreement and that it therefore owned the patents at issue. AC ¶ 40 & Ex. F; *Rose v. Rinaldi*, 654 F.2d 546, 547 (9th Cir. 1981) (three-year statute of limitations for § 1983 claims in Washington State); *McDougal v. County of Imperial*, 942 F.2d 668, 673-74 (9th Cir. 1991) (statute of limitations for § 1985(3) claims is same as for § 1983 claims).

But even if the § 1983 claim were not time-barred, it necessarily fails both because patent-rights assignment provisions like these have consistently been held valid (and do not violate the Thirteenth or Fourteenth Amendments), and because Microsoft is not a state actor. "Only in rare circumstances can a private party be viewed as a 'state actor' for section 1983 purposes." *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999). Courts "therefore start with the presumption that private conduct does not constitute governmental action." *Id.* The theory that Microsoft's use of federal tax credits for research and development somehow makes Microsoft a governmental actor for purposes of its Employee Agreement cannot prevail under current law.  *See, e.g.*, *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 927 (9th Cir. 2011) (affirming dismissal of § 1983 claim because "defendants's actions do not present the required 'close nexus between the State and the challenged action'"); *Morse v. N. Coast Opportunities, Inc.*, 118 F.3d 1338, 1343 (9th Cir. 1997) (noting that Supreme Court has held that even "a heavily financed and regulated school did not satisfy the symbiotic relationship test because there was no showing that the government profited from the school's alleged constitutional violations"). And even if Microsoft could be construed as a governmental actor, Plaintiff claims only that it was acting on behalf of the *federal* government, which is not subject to § 1983. *See Hodges v. CGI Fed. Def. & Intelligence*, 727 Fed. App'x 236, 239 (9th Cir. 2018) (§ 1983 does not apply to federal government).

DEFENDANT MICROSOFT'S MOTION TO DISMISS
AMENDED COMPLAINT - 16
Case No. 2:19-CV-00130

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

Plaintiff's claim under § 1985 is equally unavailing on the merits; Plaintiff has not alleged, and cannot show, a conspiracy between Microsoft and other individuals or entities to deprive Plaintiff of his civil rights.

The Ku Klux Klan Act of 1871 (now 42 U.S.C. § 1985(3)) was enacted by the Reconstruction Congress to protect individuals, and primarily African Americans, "from conspiracies to deprive them of their legally protected rights." *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992). To state a cause of action under this Section, a plaintiff must show, among other things, "a conspiracy . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." *Id.* This "requires that in addition to identifying a legally protected right, a plaintiff demonstrate a deprivation of that right motivated by some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" *Id.* Section 1985(3) "is not to be construed as a general tort law," and it extends beyond race only where "the courts have designated the class in question a suspect or quasi-suspect classification requiring more exacting scrutiny or [] Congress has indicated through legislation that the class required special protection." *Id.* (internal quotation marks and citations omitted); *see also Cordell v. Greater Columbia Reg'l Support Network*, No. CV-05-5119, 2006 WL 2354342, at *3-5 (E.D. Wash. Aug. 15, 2006) ("This case is more properly characterized as one involving a private employment dispute rather than discrimination against a protected class. Section 1985(3) does not provide a general avenue of relief for an employee with grievances against his employer.").

Here, Plaintiff has not even suggested that Microsoft's interactions with Plaintiff regarding patent ownership were motivated by discriminatory animus towards a protected class of which he is a member, as is required for such a claim. *See, e.g., United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 838 (1983) (§ 1985(3) does not "reach conspiracies motivated by economic or commercial animus"); *Sever*, 978 F.2d at 1537-38 (9th Cir. 1992) (affirming § 1985 dismissal in part because "[i]f [the defendants] conspired to

DEFENDANT MICROSOFT'S MOTION TO DISMISS
AMENDED COMPLAINT - 17
Case No. 2:19-CV-00130

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

harass plaintiff, they did so because they perceived that [his] actions were harmful to [the defendants'] economic interests," and not due to discriminatory animus); *Cordell*, 2006 WL 2354342, at *4 (dismissing § 1985 claim with prejudice in part because "[e]ven if [plaintiff] alleged membership in a protected class [which the court found he had not], he has nevertheless failed to make even the barest of allegations that the defendants' actions which form the basis for this case are the offspring of a 'class-based invidiously discriminatory animus.'"). Plaintiff also has not adequately alleged a deprivation of any fundamental right: his Thirteenth Amendment claim fails for the same reasons as his forced labor claim, and an employer asserting its rights under a valid patent-rights assignment provision is both lawful and appropriate, not a deprivation of his Fourteenth Amendment rights.

The legal frameworks for § 1983 and § 1985 claims simply cannot bend far enough to fit the facts alleged here, even if Plaintiff's claims were not already time-barred.  Because repleading would be futile, these claims should be dismissed with prejudice.

## VIII. PLAINTIFF'S CLAIM FOR FRAUD IS TIME-BARRED AND INSUFFICIENTLY PLEADED (Count 8)

Plaintiff claims that he was fraudulently or wrongfully induced to sign the Employee Agreement by Microsoft's allegedly false assurance that he could preserve his ownership interest in preexisting patents by submitting an Exclusion List, and that he was injured when Microsoft later denied the existence of any such list and claimed ownership of the patents.

This claim has numerous legal flaws, not least of which is the fact that it too is time-barred under the three-year statute of limitations for fraud. RCW 4.16.080(4). Plaintiff, by his own admission, became aware no later than February 19, 2015 of Microsoft's position that he had not submitted an Exclusion List with his Employee Agreement and that Microsoft therefore owned the patents at issue. AC ¶ 40 & Ex. F. Because Plaintiff did not file this action until January 28, 2019—almost four years after that discovery—his fraud claim is barred.

DEFENDANT MICROSOFT'S MOTION TO DISMISS
AMENDED COMPLAINT - 18
Case No. 2:19-CV-00130

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

Even if it were not time-barred, Plaintiff's fraud claim fails for essentially the same reasons discussed above with respect to mail fraud. Each of the requisite elements[4] must be pleaded with particularity under Rule 9(b), except that the defendant's state of mind may be alleged generally. However, a plaintiff still must plead facts that make scienter *plausible*, as opposed to merely possible. Here, Plaintiff has not clearly alleged any specific representation of an existing fact that a Microsoft employee made to him with knowledge that it was false and on which he relied to his detriment. Even taking as true the allegation that Plaintiff sent the Exclusion List to Microsoft in 2011, Plaintiff has not alleged any *facts*—as opposed to conclusory assertions—indicating that Microsoft had actual knowledge of falsity or intent to defraud Plaintiff when discussing the Exclusion List with Plaintiff at any point.

Moreover, while Plaintiff's hypothesis of a grand fraudulent scheme is theoretically *possible*, it is not *plausible* without factual support; indeed, it seems significantly less plausible here than the possibility of a simple record-keeping error (assuming the allegations in the Amended Complaint are true and the Exclusion List was actually submitted). *See Pemberton v. Nationstar Mortg. LLC*, 331 F. Supp. 3d 1018, 1046-47 (S.D. Cal. 2018) (dismissing fraud claim with prejudice because conclusory allegations re knowledge of falsity and intent failed to make scienter plausible); *Gilliland v. Chase Home Fin., LLC*, No. 13-cv-2042, 2014 WL 325318, at *6 (E.D. Cal. Jan. 29, 2014) (dismissing for same reason). Where, as here, Plaintiff's claim is time-barred and he cannot plead the requisite elements of fraud, dismissal with prejudice is appropriate.

## IX.   PLAINTIFF IS NOT ENTITLED TO DECLARATORY RELIEF (Counts 9, 10, and 11)

In addition to the claims for damages discussed above, Plaintiff seeks declaratory judgment that (1) the Employee Agreement violates RCW 49.44.140; (2) the Employee

---

[4] Plaintiff must show: "(1) representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's right to rely upon it; and (9) damages suffered by the plaintiff." *Adams v. King Cty.*, 164 Wash. 2d 640, 662 (2008).

DEFENDANT MICROSOFT'S MOTION TO DISMISS
AMENDED COMPLAINT - 19
Case No. 2:19-CV-00130

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

Agreement violates due process under the Fourteenth Amendment; and (3) Microsoft is engaged in "inequitable conduct."

Plaintiff's Fourteenth Amendment claim is easily disposed of, since the Fourteenth Amendment only protects individuals from *state* action that would deprive them of property without due process of law. *See Jackson v. Metropolitan*, 419 U.S. 345, 349 (1974) ("[P]rivate action is immune from the restrictions of the Fourteenth Amendment."). Microsoft's alleged use of federal tax credits for research and development is insufficient as a matter of law to establish the "close nexus" between the government and Microsoft's use of the Employee Agreement that Plaintiff would have to show in order to bring such a claim. *See id.* at 351. And even if Microsoft could somehow be construed as a governmental actor, the only alleged connection here is to the *federal* government, which is not subject to the Fourteenth Amendment. *United States v. Sherpinski*, 70 F.3d 121, at *2 (9th Cir. 1995).

As for Plaintiff's other declaratory judgment claims, neither is currently suitable for judicial determination. "The declaratory judgment procedure is available in the federal courts only in cases involving an actual case or controversy … and it may not be made the medium for securing an advisory opinion in a controversy which has not arisen." *Coffman v. Breeze Corp.*, 323 U.S. 316, 324 (1945); *see also Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) ("[The court's] role is neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies . . . ."). There is no actual dispute between the parties regarding RCW 49.44.140 or the "right of first refusal" contained in Paragraph 5 of the Employee Agreement: Plaintiff does not—and cannot—allege that Microsoft has ever invoked that provision with respect to any of Plaintiff's inventions or that Plaintiff has suffered any injury in connection with it. As a result, a declaratory judgment on this question would amount to an advisory opinion with respect to an issue not ripe for adjudication.[5]

---

[5] Plaintiff has brought the same claim in his state court action as well. Even taking Plaintiff's factual allegations as true, Microsoft contends that the right of first refusal in the Employee Agreement does not violate RCW 49.44.140 because it is not the type of assignment of rights that the statute prohibits. Nonetheless, as detailed above, Microsoft believes that this claim is not ripe for adjudication.

DEFENDANT MICROSOFT'S MOTION TO DISMISS
AMENDED COMPLAINT - 20
Case No. 2:19-CV-00130

Consideration of Plaintiff's "inequitable conduct" claim would be equally improper. The claim is so vague as to be unanswerable; untethered from any legal basis, it is not clear by what standard "inequity" would be judged or what consequences, if any, might flow from such a finding. This is precisely the sort of vague "advisory" opinion that Courts are not permitted to issue under the Declaratory Judgment Act. *See, e.g.*, *Veoh Networks, Inc. v. UMG Recordings, Inc.*, 522 F. Supp. 2d 1265, 1269 (S.D. Cal. 2007) ("The controversy must be real, substantial, and capable of specific relief through a decree of conclusive character."). Moreover, to the extent it merely restates Plaintiff's other legal arguments—but in a context seemingly divorced from damages—this claim fails for the same reasons detailed above: even taking the factual allegations as true, Microsoft's use and enforcement of the Employee Agreement is lawful and *not* "inequitable."

## XIV.   AS A *PRO SE* LITIGANT, PLAINTIFF MAY NOT REPRESENT A CLASS (Count 7)

Though styled as a "Count," this section of the Amended Complaint does not raise any new claims; it merely alleges that the claims Plaintiff has brought individually also apply to a putative class of all employees who signed the Employee Agreement, and that class treatment is appropriate.

As a *pro se* litigant, Plaintiff may not bring claims on behalf of a class. *See, e.g.*, *Simon v. Hartford Life, Inc.,* 546 F.3d 661, 664-65 (9th Cir. 2008) (*pro se* litigants prohibited from pursuing claims on behalf of others in a representative capacity); *Keyter v. Boeing Co.*, No. C13-982-RSM, 2013 WL 4458975, at *1 (W.D. Wash. Aug. 16, 2013) (Martinez, J.) ("[Plaintiff] may not represent a putative class action as a *pro se* litigant."). This alone requires dismissal of his class claims. *See, e.g.*, *Joseph v. Amazon.com, Inc.*, 46 F. Supp. 3d 1095, 1101 (W.D. Wash. 2014) (dismissing class claims because "[a]s a *pro se* litigant, [plaintiff] may not represent other individuals in a class action lawsuit").

Even if Plaintiff were to retain adequate counsel, his class claims fail for all the same reasons as his individual claims. And even if one or more claims were somehow to survive,

DEFENDANT MICROSOFT'S MOTION TO DISMISS
AMENDED COMPLAINT - 21
Case No. 2:19-CV-00130

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

1  individualized inquiries would predominate over any common questions of law or fact,[6] making

2  certification inappropriate. For all of these reasons, dismissal of Plaintiff's class claims with

3  prejudice is appropriate.

4  **CONCLUSION**

5    Plaintiff has failed to allege sufficient, specific facts to support any of his claims against

6  Microsoft, and any effort to replead these claims would be futile. Microsoft therefore respectfully

7  asks the Court to dismiss the Amended Complaint in its entirety with prejudice.

8    DATED:  June 6, 2019

9          LANE POWELL PC

10

11         By  */s/Heidi B. Bradley*

12          Heidi B. Bradley, WSBA No. 35759
        Tiffany Scott Connors, WSBA No. 41740

13          Genevieve York-Erwin, WSBA No. 49820
        1420 Fifth Avenue, Suite 4200

14          P.O. Box 91302
        Seattle, WA  98111-9402

15          Telephone: 206.223.7000
        Facsimile: 206.223.7107

16          Email:  bradleyh@lanepowell.com
          connorst@lanepowell.com

17            yorkerwing@lanepowell.com

18         Attorneys for Defendant Microsoft Corp.

19

20

21

22

23

24

25

26

27

[6] There would be individualized questions regarding (at least): whether each individual class member submitted an Exclusion List and under what circumstances; what Microsoft told each in connection with that submission; whether Microsoft later acknowledged the existence of such a list, disputed its submission, or otherwise disputed ownership of any of the employee's patents; and what, if any, injury any particular employee suffered as a result.

DEFENDANT MICROSOFT'S MOTION TO DISMISS
AMENDED COMPLAINT - 22
Case No. 2:19-CV-00130

## **CERTIFICATE OF SERVICE**

The undersigned certifies under penalty of perjury under the laws of the United States, that on the date listed below, the document attached hereto was presented to the Clerk of the Court for filing and uploading to the CM/ECF system.  In accordance with their ECF registration agreement and the Court's rules, the Clerk of the Court will send e-mail notification of such filing to all CM/ECF participants.

DATED this 6th day of June, 2019, at Seattle, Washington.


/s/ Heidi B. Bradley
Heidi B. Bradley

DEFENDANT MICROSOFT'S MOTION TO DISMISS
AMENDED COMPLAINT - 23
Case No. 2:19-CV-00130

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107