THE HONORABLE RICARDO S. MARTINEZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ATM SHAFIQUL KHALID, an individual and on behalf of similarly situated, Xencare Software, Inc., <br><br> Plaintiff, <br><br> v. <br><br> MICROSOFT CORPORATION, a Washington Corporation, John Doe *n*, <br><br> Defendant(s). | Case No. 2:19-cv-00130 <br><br> **DEFENDANT MICROSOFT CORPORATION'S REPLY IN SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT** <br><br> Note on motion calendar: June 28, 2019 |

DEFENDANT MICROSOFT CORPORATION'S REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 2:19-cv-00130

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

Even reading the allegations in the Amended Complaint most generously, none of Plaintiff's claims survive: each is time-barred or falls far short of alleging the elements required to state a cause of action. Plaintiff's citations to inapposite case law, and arguments about particular portions of the Employee Agreement that do not relate to any of his causes of action, cannot rescue his claims. Because each of Plaintiff's claims is fundamentally flawed in ways that Plaintiff cannot fix, Microsoft respectfully asks that the Court dismiss the Amended Complaint in its entirety with prejudice.

## I.   ANTITRUST CLAIMS (Counts 1 & 2)

Plaintiff cannot state an antitrust claim for multiple reasons. With respect to his Sherman Act Section 1 claim, Plaintiff has not alleged a combination or conspiracy to restrain trade, nor has he alleged antitrust injury. Even if Plaintiff's signing of the Employee Agreement with Microsoft could constitute an "agreement or conspiracy," which it did not,[1] Plaintiff has not sufficiently alleged that it unreasonably restrains trade, or that it causes any cognizable injury to competition.

Contrary to Plaintiff's conclusory assertion, the Employee Agreement is not a *per se* unreasonable restraint of trade. Courts have consistently limited the *per se* category to a few types of conduct that are so harmful to competition and so rarely justified that courts find it unnecessary to prove injury to competition.[2] *See Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 900 (9th Cir.

---

[1] It is black letter law that "officers or employees of the same firm do not provide the plurality of actors imperative for a § 1 conspiracy." *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 769 (1984). Plaintiff cites a First Circuit case that he argues creates an exception to the *Copperweld* doctrine, but it did no such thing. Instead, it addressed the "equal involvement defense," which Microsoft does not assert here. *See Sullivan v. Nat'l Football League*, 34 F.3d 1091, 1107-08 (1st Cir. 1994). Moreover, Plaintiff's approach would be inconsistent with Ninth Circuit decisions in this area. *See Nat'l Flood Servs., Inc. v. Torrent Techs., Inc.*, No. C05-1350Z, 2006 WL 1518886, at *5 (W.D. Wash. May 26, 2006) ("The Ninth Circuit has never expressly adopted the independent personal stake exception to the general rule that employees cannot conspire with their employer.").

[2] Plaintiff argues (though under his Section 2 analysis) that Microsoft's "tying" of the patent-rights assignment provision to the Employee Agreement constitutes a prohibited tying arrangement (Response Br. 15). But the "tying" Plaintiff alleges simply is not "tying" under the Sherman Act. Courts have not extended this concept beyond the narrow legal definition employed in Sherman Act cases. *See, e.g.*, *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1199 (9th Cir. 2012) (defining "tying" as an arrangement where a seller only agrees to sell one of its

DEFENDANT MICROSOFT'S REPLY IN SUPPORT OF
MOTION TO DISMISS - 1
Case No. 2:19-CV-00130

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

1983) (noting that the 9th Circuit has "been reluctant to extend the per se categories of antitrust violations beyond price-fixing, market division, group boycotts, and tying arrangements" and declining to extend *per se* rule to noncompetition agreements between employer and employee). The Employee Agreement does not fall within any of these categories, nor does it unreasonably restrain trade under a rule of reason. The tendency of a contract to restrain trade does not in itself mean that it does so unreasonably, and patent-assignment provisions in employment agreements of the type at issue here have consistently been found lawful and enforceable (*see* Microsoft's Opening Br. 1). An "agreement" to enter into and abide by a lawful employment agreement that requires assignment of certain patent rights simply cannot constitute a conspiracy unreasonably to restrain trade.

And even if it could be so construed, Plaintiff has not alleged any injury to competition in a particular market as a consequence of the alleged violation. Read most generously, Plaintiff appears to identify at least four different potentially relevant markets (Response Br. 12), but does not allege or explain how *competition* in any of these markets has been injured by his Employee Agreement. All of the alleged injury is to Plaintiff personally and his business prospects, which cannot form the basis of an antitrust claim.

Plaintiff's failure to conduct the necessary market analysis dooms his monopolization claim under Section 2 as well, both because he cannot establish antitrust injury and because he cannot show actual or attempted monopolization of a particular market. Plaintiff broadly alleges that Microsoft has a "monopoly power . . . in multiple technology areas like Office Productivity Software, Desktop Operating Systems, Cloud Computing" (AC ¶ 102), but "[a] mere showing of substantial or even dominant market share alone cannot establish market power sufficient to carry out a predatory scheme. The plaintiff must show that new rivals are barred from entering the market and show that existing competitors lack the capacity to expand their output to challenge the predator's high price." *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1439 (9th Cir. 1995).

---

products on the condition that the buyer also purchase a different product).

DEFENDANT MICROSOFT'S REPLY IN SUPPORT OF
MOTION TO DISMISS - 2
Case No. 2:19-CV-00130

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

Because Plaintiff has failed to allege any of the necessary market details or analysis in this regard, his Section 2 claim must be dismissed.

Plaintiff invokes the *Walker Process* line of cases seemingly as a separate means of proving an antitrust violation, but *Walker Process* simply held that "the enforcement of a patent procured by fraud on the Patent Office may be violative of § 2 of the Sherman Act *provided the other elements necessary to a § 2 case are present*." *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*, 382 U.S. 172, 174 (1965) (emphasis added). That is, *Walker Process* stands for the proposition that patent owners, who usually are immune from antitrust suit for enforcing their patents, will not be immune if they have procured and enforced the patent in bad faith. This is not relevant to the case at hand: Microsoft is not alleged to have procured a patent by fraud or brought an enforcement action against Plaintiff to enforce its patent rights, in bad faith or otherwise.[3] *See K-Lath, Div. of Tree Island Wire (USA), Inc. v. Davis Wire Corp.*, 15 F. Supp. 2d 952, 954-57, 964 (C.D. Cal. 1998) (dismissing *Walker Process* claim because "Defendants did not threaten [plaintiff] with an infringement suit" where defendant, in extensive communications with plaintiff, expressly reserved its right to claim patent infringement by plaintiff in the future but did not specifically threaten suit). And even if Plaintiff could somehow show *Walker Process* fraud, he has failed to allege any of the other necessary elements of a Section 2 claim—monopoly power in a defined relevant market, that Microsoft acquired and maintained that power willfully, or causal antitrust injury. Accordingly, both of his antitrust claims should be dismissed with prejudice.

## II.   ACTUAL OR ATTEMPTED FORCED LABOR (Count 4)

While it is of course correct that the forced labor statute is not strictly limited to "trafficking" cases, courts have consistently, and appropriately, interpreted the statute as

---

[3] *F.T.C. v. Actavis, Inc.*, 570 U.S. 136 (2013), is not to the contrary. As in *Walker Process*, the Court in *Actavis* concluded that reverse-payment settlement agreements were not immune from antitrust attack simply because one of the defendants held a valid patent, which otherwise would protect it from antitrust liability so long as the anticompetitive effect fell within the scope of the patent's exclusionary potential. *Id.* at 147-53. The holding did not relieve the FTC of the burden of establishing all of the necessary elements of its antitrust claims, it simply removed a barrier to that suit.

DEFENDANT MICROSOFT'S REPLY IN SUPPORT OF
MOTION TO DISMISS - 3
Case No. 2:19-CV-00130

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

applying only to egregious situations where the perpetrator uses force or threats of serious harm to coerce the victim into performing work for it. *See, e.g.*, *Alvarado v. Universidad Carlos Albizu*, No. 10-22072-CIV, 2010 WL 3385345, at *4 (S.D. Fla. Aug. 25, 2010) (dismissing claim where plaintiff was not trafficked, earned healthy salary, and enjoyed same employment rights as any other alien resident; "[t]ypical § 1589 cases involve use of force, threats of violence, fraud, and coercion that prevent the employee/traffickee from having viable exit options"); *Roman v. Tyco Simplex Grinnell*, No. 8:16-CV-3449-T-33AEP, 2017 WL 3394295, at *5-6 (M.D. Fla. Aug. 8, 2017) (dismissing forced labor claim where plaintiff "was free to leave his job" and eventually did, and failed to explain why being terminated from his job would be sufficiently serious to constitute "serious harm"), *aff'd*, 732 F. App'x 813 (11th Cir. 2018).

No such serious harm was threatened here, and in any case, Plaintiff does not allege that the harm he feared *caused him* to perform work for Microsoft. Section 1589 defines "serious harm" as including financial harm "that is sufficiently serious, under all the circumstances, to compel a reasonable person of the same background and in the same circumstances *to perform or to continue performing labor . . . in order to avoid incurring that harm*." 18 U.S.C. § 1589(c)(2). Reading the Amended Complaint most generously, the only specific "threat" alleged is that Microsoft told Plaintiff he could not tell investors that Microsoft had no interest in the disputed patents unless he granted Microsoft a royalty-free license in exchange for Microsoft transferring its ownership interest in the patent family. AC ¶ 117 & Ex. G. This was not a "threat" intended to coerce Plaintiff into doing anything; it was a statement of fact regarding Microsoft's understanding of its legal rights and the consequences that flowed from that. *See Headley v. Church of Scientology Intern.*, 687 F.3d 1173, 1180 (9th Cir. 2012) ("In applying the [TVPA], [courts] must distinguish between improper threats or coercion and permissible warnings of adverse but legitimate consequences."). Moreover, the "serious harms" Plaintiff claims to have feared (Response Br. 16), are not alleged to have actually caused him to continue performing work. *See id.* (dismissing claim in part because "the record does not suggest that the defendants obtained [plaintiffs'] labor 'by means of' those [coercive] features of Sea Org life.. .

DEFENDANT MICROSOFT'S REPLY IN SUPPORT OF
MOTION TO DISMISS - 4
Case No. 2:19-CV-00130

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000  FAX: 206.223.7107

. [Section 1589] requires that serious harm befall an employee if she did not continue to work or a threat that compels her to *remain* with the employer" (internal quotation marks omitted)). Plaintiff's own allegations indicate that his decision to continue working on the Mini Cloud and Safe and Secure patent families after he left Microsoft was *in spite of*, not because of, Microsoft's assertion of interests in those patents; indeed, Microsoft did not request or encourage him to continue this work, and it appears he has done so for his own purposes. This simply is not a case of "forced labor," and Plaintiff's claim should be dismissed with prejudice.

## III. FRAUD (Count 8)

Plaintiff's fraud claims are barred by the applicable three-year statute of limitations. Plaintiff argues that the "continuing tort" doctrine applicable to real property in Washington also applies to his fraud claim because it concerns patent ownership and "a patent is treated as land in terms of right." Response Br. 21. This is incorrect as a matter of law: the continuing tort doctrine is limited to real property, and Plaintiff cannot cite a single Washington case in which a court has applied it to claims concerning patents.[4]

Plaintiff also argues that to the extent he alleges damages in 2017 and 2018 stemming from the May 27, 2016 M&G Letter, his claim is not time-barred. But any such damages are irrelevant for statute of limitations purposes because his fraud claim fully accrued in 2015. The Amended Complaint clearly alleges that Plaintiff became aware on February 19, 2015, at the latest, of Microsoft's position that he had not submitted an Exclusion List with his Employee Agreement and that Microsoft therefore owned the patents at issue, and that he began trying and failing to market his patents in 2015 after he was terminated. AC ¶¶ 36-40 & Ex. F. Because his own allegations establish that all the necessary elements of his fraud claim were present no later than 2015, Plaintiff's fraud claims should be dismissed as time-barred.

---

[4] Nor does the 1877 Supreme Court case Plaintiff cites stand for the broad proposition that a patent is treated as real property in all contexts; the Court merely made the unremarkable statement in a patent infringement suit, in *dicta*, that a patent "is as much property as a patent for land." *Consolidated Fruit-Jar Co. v. Wright*, 94 U.S. 92, 96 (1877).

DEFENDANT MICROSOFT'S REPLY IN SUPPORT OF
MOTION TO DISMISS - 5
Case No. 2:19-CV-00130

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

But even if the claim were not time-barred, Plaintiff has not plausibly alleged the necessary elements. Plaintiff appears to argue that a "presumption of fraud" attaches here and "creates a presumption of intention"; this too is incorrect as a matter of law. Plaintiff has not alleged any facts that might support such a theory, and Microsoft has never in fact held any position of trust or confidence with respect to Plaintiff. Quite the opposite, they were contracting parties dealing with one another at arms' length. Nothing about the relationship or interactions Plaintiff has alleged would cause a presumption of fraud to attach, and this concept cannot save the insufficiency of Plaintiff's pleadings.[5] Even assuming that Plaintiff submitted an Exclusion List, Plaintiff has not alleged any facts, as opposed to conclusory assertions, tending to suggest that either the employees who allegedly told Plaintiff in 2011 that he could protect his preexisting inventions by submitting a list, or the different employees who denied having any record of a list in 2015, had actual knowledge of falsity or any intent to defraud Plaintiff in their communications. Plaintiff posits a grand patent-grabbing scheme that is theoretically possible but significantly less plausible than the possibility of a record-keeping error, particularly where Plaintiff has not alleged *any* factual support for his sweeping accusations. Because Plaintiff's claim is time-barred and he cannot plead the requisite elements of fraud, dismissal with prejudice is appropriate.

## IV.   RACKETEERING (Counts 3 & 5)

Conclusory allegations aside, Plaintiff has failed to allege an "enterprise" separate and distinct from the corporate defendant here, or the necessary "pattern" of racketeering activity.

In general, RICO plaintiffs "must allege and prove the existence of two distinct entities:

---

[5] The decisions Plaintiff cites do not support his argument. *In re Smith's Estate*, 68 Wash.2d 145, 153-54 (1966), concerned the presumption of *undue influence* (its own well-developed doctrine in trust and estate litigation) that may arise from the facts and circumstances surrounding the execution of a will, and particularly from a fiduciary or confidential relationship between the decedent and beneficiary. Plaintiff's quotation from *Miebach v. Colasurdo*, 35 Wash. App. 803, 819 (1983) is taken out of context, from the dissent in a case concerning bona fide purchasers of property. *Synergy Financial, LLC v. Zarro*, 329 F. Supp. 2d 701 (W.D. N.C. 2004) was applying North Carolina law on constructive fraud, which requires the existence of a fiduciary relationship before any presumption of fraud may arise.

DEFENDANT MICROSOFT'S REPLY IN SUPPORT OF
MOTION TO DISMISS - 6
Case No. 2:19-CV-00130

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

(1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001). Plaintiff argues that "Microsoft participated in the racketeering scheme and the participation alone forms a separate enterprise," citing *Webster v. Omnitrition Intern., Inc.*, 79 F.3d 776, 786 (9th Cir. 1996). Response Br. 23. But in *Webster*, the corporation at issue was not alleged to have had any existence or operation separate from the alleged racketeering activity, i.e., the pyramid scheme it was running. By contrast, the Ninth Circuit has indicated, and other Circuits have held, that "a RICO claim might fail on distinctiveness grounds where the entity was the 'person' and the entity, together with all its employees and agents, were the 'enterprise.'" *United States v. Mongol Nation*, 693 F. App'x 637, 638 (9th Cir. 2017) (internal quotation marks omitted); *see also Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir. 1994) ("[A] corporate entity may not be both the RICO person and the RICO enterprise . . . . Where employees of a corporation associate together to commit a pattern of predicate acts in the course of their employment and on behalf of the corporation, the employees in association with the corporation do not form an enterprise distinct from the corporation."). To the extent Plaintiff now characterizes the relevant "enterprise" as consisting of Microsoft and its employees, this fails the distinctiveness requirement. And as actually pleaded in the Amended Complaint—which alleges a vast, nebulous patent-grabbing conspiracy involving various largely unnamed organizations and service providers—the enterprise allegations are so vague that they cannot survive even a notice pleading standard. AC ¶¶ 107-11.

Plaintiff's racketeering claims also fail because he has not adequately alleged a pattern of racketeering activity, for many of the same reasons discussed above. A pattern requires at least two predicate acts, and the Supreme Court has indicated that three or more may be required. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n.14 (1985). Here, Plaintiff has not adequately alleged any. To the extent Plaintiff's claims are based on extortion, they fail because patent-assignment provisions of the type at issue have repeatedly been held valid, and efforts to enforce valid contracts simply are not extortionate. To the extent Plaintiff's racketeering claims are based

DEFENDANT MICROSOFT'S REPLY IN SUPPORT OF
MOTION TO DISMISS - 7
Case No. 2:19-CV-00130

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

on predicate acts of forced labor and mail fraud, they fail for the same reasons detailed above with respect to those claims.[6] Notably, Plaintiff has not alleged any facts that would make the inference *plausible*, as opposed to merely possible, that anyone at Microsoft had a specific intent to deceive at any point in their interactions with Plaintiff. *See* AC ¶ 78 (acknowledging that Microsoft may simply have misplaced the Exclusion List). Without a plausible inference of scienter, among other things, Plaintiff's mail fraud allegations all fail and cannot help establish a pattern of racketeering.[7] *See Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 1000 (9th Cir. 2014) (affirming RICO dismissal because the "factual allegations do not support a plausible inference that Defendants had the required specific intent to defraud, nor do they tend to exclude the alternative explanation that the transactions were merely a group of business deals gone bad during a deep recession").

## V.   CIVIL RIGHTS (Counts 6 & 12)

As a preliminary matter, Plaintiff's argument that his § 1983 and § 1985 claims are not time-barred because he did not get a response to his question about the signed paper copy of his Employee Agreement until May 27, 2016 is unavailing. Microsoft's assertion of rights in the disputed patents was clear and unequivocal in its February 19, 2015 email to plaintiff and in all of the parties' extensive subsequent correspondence on the subject. *See* AC ¶¶ 40-48 & Exs. F-G. Plaintiff's communications with Microsoft from February 19, 2015 onward clearly reflect that he understood Microsoft to be claiming rights in the patents at issue, and that he contested that claim. *See id.* Whether Plaintiff held out hope that Microsoft might discover additional documents that would change its position is irrelevant to the statute of limitations analysis.

---

[6] The allegations regarding Miki Mullor are insufficiently specific to state a predicate act of mail fraud. Plaintiff alleges only what he appears to have read in news articles, and cannot plead any of the elements of this alleged fraud with sufficient specificity. AC ¶¶ 78-79, 113.

[7] Contrary to Plaintiff's assertions, the court in *Nunag-Tanedo v. East Baton Rouge Parish School Bd.*, 790 F. Supp. 2d 1134, 1148-49 (C.D. Cal. 2011), actually held that the mail fraud allegations were insufficiently specific and granted the defendants' motion to dismiss as to those predicate acts. The court did, however, find predicate acts of extortion, forced labor, and human trafficking adequately pleaded where the defendants had threatened plaintiffs with deportation and financial ruin if they did not continue to work for them and pay extortionate fees required under various contracts. *Id.* at 1149-51.

DEFENDANT MICROSOFT'S REPLY IN SUPPORT OF
MOTION TO DISMISS - 8
Case No. 2:19-CV-00130

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

Because Plaintiff was aware of Microsoft's assertion of rights in the patents no later than February 2015, his civil rights claims are barred by the three-year statute of limitations.

Even if they were not, however, these claims are fundamentally flawed in ways Plaintiff cannot fix. Section 1983 applies only to "state actors," and Microsoft's opening brief explained why the factual allegations in the Amended Complaint fail to establish this necessary element. In response, Plaintiff appears only to argue that "private entity adopting an unconstitutional policy, practices or custom will violate section 1983." Response Br. 18. As Plaintiff's own citations clearly show, however, this is true only where the private entity is "acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012). Plaintiff offers no argument or explanation as to how Microsoft's conduct with respect to his patents constitutes state action. Because Plaintiff has not adequately alleged—and cannot allege—that Microsoft acted under color of state law in any way relevant to this action, his Section 1983 claim should be dismissed with prejudice.

Likewise, Plaintiff's Section 1985 claim necessarily fails because he cannot adequately allege a conspiracy motivated by discriminatory animus to deprive him of his civil rights. Among other things, a § 1985 claim "requires that in addition to identifying a legally protected right, a plaintiff demonstrate a deprivation of that right *motivated by some racial, or perhaps otherwise class-based, invidiously discriminatory animus . . . .*'" *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992) (emphasis added). This protection extends beyond race only where "the courts have designated the class in question a suspect or quasi-suspect classification requiring more exacting scrutiny or [] Congress has indicated through legislation that the class required special protection." *Id.* (internal quotation marks and citations omitted). In response, Plaintiff identifies several "classes" of which he claims to be a member: (i) "class of creative employees in creative service"; (ii) "a class of employees who would have inventions subject to disclosure under the exclusion list of section 6 of the Employee Agreement"; and (iii) "employees of a class aged forty and older."[8] Response Br. 19. However, he does not (a) explain how any of those

---

[8] The concept of a "class of one"—developed in the context of equal protection claims against

DEFENDANT MICROSOFT'S REPLY IN SUPPORT OF
MOTION TO DISMISS - 9
Case No. 2:19-CV-00130

classes are the type of racial or otherwise suspect classes protected by § 1985,[9] or (b) identify any factual allegations tending to show that Microsoft's conduct with respect to Plaintiff was motivated by discriminatory intent towards any protected class. *See Cordell v. Greater Columbia Reg'l Support Network*, No. CV-05-5119, 2006 WL 2354342, at *4 (E.D. Wash. Aug. 15, 2006) (dismissing § 1985 claim with prejudice in part because "[e]ven if [plaintiff] alleged membership in a protected class [which the court found he had not], he has nevertheless failed to make even the barest of allegations that the defendants' actions which form the basis for this case are the offspring of a 'class-based invidiously discriminatory animus.'"). Plaintiff's allegations are insufficient in both respects and cannot be remedied by amendment. As a result, dismissal with prejudice is appropriate.

## VI. DECLARATORY RELIEF (Counts 9, 10, and 11)

Plaintiff appears to have abandoned his requests for declaratory judgment that the Employee Agreement violates the Fourteenth Amendment and that Microsoft is engaged in "inequitable conduct." This leaves only his claim with respect to the "right of first refusal" provision's alleged violation of RCW 49.44.140.

While Plaintiff spends a great deal of time attacking the right of first refusal in his Response, the declaratory judgment claim is the only one that actually implicates that right.[10] And for reasons previously detailed, that claim is not appropriate for judicial determination.

---

*state actors*—has no relevance to the § 1985 context, and indeed appears diametrically opposed to the doctrinal limitations courts have placed on § 1985 claims to keep them focused on invidious discrimination.

[9] The first two plainly are not suspect classes, and "employees of a class aged forty and older" have been held not to be protected under § 1985. *See, e.g.*, *Webb v. Cty. of El Dorado*, No. 2: 15-CV-01189, 2015 WL 9480956, at *6 (E.D. Cal. Dec. 29, 2015) (dismissing age-based § 1985 claim because "classes based on age are not considered suspect for purposes of § 1985").

[10] The right of first refusal is not relevant to any of plaintiff's claims for damages; he does not allege that he has been injured in any way by the existence or exercise of this provision, and none of his causes of action seeks damages on such a theory. And even if the provision were to be found unlawful—which Microsoft contests—the only remedy would be to strike *that specific sentence* from Paragraph 5 of the Employee Agreement. *See Waterjet Tech., Inc. v. Flow Int'l Corp.*, 140 Wash.2d 313, 316-23 (2000) (remedy for violation of RCW 49.44.140 is "limited to excision of the portions of the agreement inconsistent with RCW 49.44.140). This would leave the rest of the Employee Agreement (under which Plaintiff brings his other causes of action) intact and enforceable.

DEFENDANT MICROSOFT'S REPLY IN SUPPORT OF
MOTION TO DISMISS - 10
Case No. 2:19-CV-00130

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

There is no actual dispute between the parties regarding RCW 49.44.140 or the right of first refusal; Plaintiff does not allege that Microsoft has ever invoked that provision with respect to any of Plaintiff's inventions or that Plaintiff has suffered any injury attributable to it. Indeed, Plaintiff himself alleges that the patents at issue relate so directly to Microsoft's business and research that he believes the Xbox One is infringing the Mini Cloud patent (*see* AC ¶¶ 25, 60 & Ex. G), in which case the patents would fall outside of RCW 49.44.140's protection. *See* RCW 49.44.140(1)(a) (excluding from statute's protection any invention that "relates (i) directly to the business of the employer; or (ii) to the employer's actual or demonstrably anticipated research or development"). Consequently, as regards the patents actually at issue in this dispute, any determination concerning the legality of the right of first refusal would be speculative and constitute an improper advisory opinion. *See Waterjet Tech., Inc. v. Flow Int'l Corp.*, 140 Wash.2d 313, 322-23 (2000) ("RCW 49.44.140(3) is not a vehicle for a facial challenge to an otherwise valid employment agreement; its purpose is to prevent enforcement of overbroad agreements that violate public policy. . . . The [] Agreement in this case required assignment of a patent that all parties have agreed is directly related to the business of Waterjet. To invalidate this agreement based on other speculative scenarios would itself be against public policy as established by the Legislature."); *see also Coffman v. Breeze Corp.*, 323 U.S. 316, 324 (1945) ("The declaratory judgment procedure . . . may not be made the medium for securing an advisory opinion in a controversy which has not arisen.").

### VII. PLAINTIFF'S CLASS CLAIMS MUST BE DISMISSED BECAUSE HE MAY NOT REPRESENT A CLASS *Pro Se* (Count 7)

"It is well-established that the privilege to represent oneself *pro se* provided by [28 U.S.C.] § 1654 is personal to the litigant and does not extend to other parties or entities." *Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664 (9th Cir. 2008) (affirming dismissal under Rule 12(b)(6) because *pro se* plaintiff could not represent other entities). While Plaintiff is correct that *Simon* concerned representation of a retirement plan rather than a class, the decision has been widely and consistently interpreted as requiring dismissal of any *pro se* claims brought on behalf of a

DEFENDANT MICROSOFT'S REPLY IN SUPPORT OF
MOTION TO DISMISS - 11
Case No. 2:19-CV-00130

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

class. *See, e.g.*, *Kendall v. United States*, 541 F. App'x 781 (9th Cir. 2013) (citing *Simon*; "The district court properly dismissed Kendall's claims on behalf of a putative class because non-attorney pro se litigants have no authority to represent anyone other than themselves."); *Keyter v. Boeing Co.*, No. C13-982-RSM, 2013 WL 4458975, at *1 (W.D. Wash. Aug. 16, 2013) (Martinez, J.) (citing *Simon*; "[Plaintiff] may not represent a putative class action as a *pro se* litigant."); *Joseph v. Amazon.com, Inc.*, 46 F. Supp. 3d 1095, 1101 (W.D. Wash. 2014) (citing *Simon*; dismissing class claims because "[a]s a *pro se* litigant, [plaintiff] may not represent other individuals in a class action lawsuit"). Because Plaintiff cannot represent a class *pro se*, his class claims must be dismissed.[11]

## CONCLUSION

For the reasons detailed above and in its opening brief, Microsoft respectfully asks the Court to dismiss the Amended Complaint in its entirety with prejudice.

DATED:  June 28, 2019

LANE POWELL PC

By */s/Heidi B. Bradley*
Heidi B. Bradley, WSBA No. 35759
Tiffany Scott Connors, WSBA No. 41740
Genevieve York-Erwin, WSBA No. 49820
1420 Fifth Avenue, Suite 4200
P.O. Box 91302
Seattle, WA  98111-9402
Telephone: 206.223.7000
Facsimile: 206.223.7107
Email:  bradleyh@lanepowell.com
            connorst@lanepowell.com
            yorkerwing@lanepowell.com

Attorneys for Defendant Microsoft Corp.

---

[11] Plaintiff appears to concede that Rule 23(g) also would pose an insurmountable obstacle to certification should the case proceed that far with Plaintiff acting *pro se*.

DEFENDANT MICROSOFT'S REPLY IN SUPPORT OF
MOTION TO DISMISS - 12
Case No. 2:19-CV-00130

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

## CERTIFICATE OF SERVICE

The undersigned certifies under penalty of perjury under the laws of the United States, that on the date listed below, the document attached hereto was presented to the Clerk of the Court for filing and uploading to the CM/ECF system. In accordance with their ECF registration agreement and the Court's rules, the Clerk of the Court will send e-mail notification of such filing to all CM/ECF participants.

DATED this 28th day of June, 2019, at Seattle, Washington.

/s/Heidi B. Bradley
Heidi B. Bradley

DEFENDANT MICROSOFT'S REPLY IN SUPPORT OF MOTION TO DISMISS - 13
Case No. 2:19-CV-00130

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107